EDWARD G. LEUTHESSER, ALLEGED TRANSFEREE OF NATIONAL METAL PRODUCTS CORP., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRED W. LEUTHESSER, JR., ALLEGED TRANSFEREE OF NATIONAL METAL PRODUCTS CORP., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28817, 28818.   Promulgated September 25, 1952.

*Fred R. Tansill, Esq.,* and *Eugene Meacham, Esq.,* for the petitioners.

*Thomas A. Steele, Jr., Esq.,* for the respondent.

1114

1118

OPINION.

RAUM, *Judge:* In view of petitioners' concession of their liability for the 1945 taxes of National Metal Products Corporation, there remains only the question of their liability with respect to 1944. The taxes involved were assessed against National, on February 13, 1948. Since the Government has failed to collect these taxes, respondent is now proceeding against petitioners, who were officers, directors, and

owners of substantially all of the stock of National. He at first determined the deficiencies against them as transferees, but by amended answer, he now seeks to hold them accountable, in the alternative, as fiduciaries under section 3467 of the Revised Statues.

1. At the outset, petitioners challenge National's liability for the taxes involved. The deficiencies were based upon a number of adjustments, of which only two are contested. The first involves a deduction for officers' salaries. National's returns for 1944 claimed a deduction of $70,000 for officers' salaries, representing $35,000 to each of the petitioners. Respondent reduced the deduction to $50,000; he determined that the amount claimed was excessive and unreasonable under section 23 (a) of the Internal Revenue Code, and that only $25,000 for each petitioner was reasonable compensation under the statute.

Petitioners introduced considerable evidence in an effort to sustain their burden of proving that salaries of $35,000 each constituted reasonable compensation. A careful consideration of all the evidence, including the evidence on cross-examination, does not convince us that reasonable compensation for petitioners' officers exceeded the aggregate of $50,000 for both petitioners which respondent has allowed. His determination in this respect is therefore approved.

The second adjustment in controversy is the denial of a deduction of $153,418.66 based upon a carry-over to 1944 of a net operating loss from 1943. Respondent's determination in this connection grows out of his action with respect to two items involved on National's 1943 returns. One of those items was a deduction for officers' salaries, and the Commissioner's conclusion that $50,000, rather than $70,000 was reasonable compensation for 1943 is hereby approved. The facts in this respect are substantially identical with the facts considered in connection with the year 1944, and our decision is the same as to both years. The other item is the amount of $150,843.93 which National subtracted on its 1943 returns from gross sales as part of "cost of goods sold" in determining its gross profits from 1943 sales. The Commissioner determined that the $150,843.93 represented cost of goods sold in 1944 rather than in 1943, and eliminated that amount from the net operating loss for 1943. However, at the same time, he allowed a deduction in the identical amount, $150,843.93, for 1944, the year here involved, as part of "cost of goods sold" in 1944.

To be sure, the Commissioner's action with respect to this item had the effect, in conjunction with his action on the salary deduction, of eliminating the net operating loss carry-over deduction. But his corresponding action in allowing the full amount of the second item of $150,843.93 as a deduction for 1944, makes it a matter of no consequence here whether he correctly eliminated that item from the 1943 net operating loss. For, to the extent that the deduction might

be restored to 1943, as contended for by petitioners, and thus taken into account in computing the net operating loss to be carried forward to 1944, the deduction for "cost of goods sold" in 1944 would have to be revised downward. It is not apparent how a greater tax benefit would accrue to petitioners for 1944 by allocating the $150,843.93 item to 1943; certainly, the amount of the net operating loss carry-over deduction in 1944, to the extent that it would be attributable to that item could not be greater than $150,843.93, while, at the same time, petitioners would lose the advantage of the $150,843.93 deduction for "cost of goods sold" in 1944. In the circumstances, it becomes wholly immaterial here in reviewing the correctness of the deficiencies asserted as to which view is accepted.

We conclude that the deficiencies determined by the respondent are correct, and we pass to the questions whether petitioners are liable for such deficiencies in these proceedings, either as transferees or as fiduciaries.

2. On the question of petitioners' transferee liability we are met at the very beginning with the contention that the deficiencies determined against them in this capacity are barred by the statute of limitations, sections 275 (a) and 311 (b) (1) of the Internal Revenue Code. Section 275 (a) requires that the tax be assessed within 3 years after the return was filed, and section 311 (b) (1) permits assessment of liability against a transferee within 1 year after the expiration of the period of limitation for assessment against the taxpayer. Accordingly, since National filed its original 1944 return on March 15, 1945, and since no waivers have been executed, the period within which the Commissioner had authority to proceed against petitioners as transferees under sections 275 (a) and 311 (b) (1) could not extend beyond March 15, 1949. But the deficiency notices herein were mailed on March 9, 1950, and are therefore untimely within the foregoing provisions.

Respondent does not challenge the effect of the foregoing provisions, as outlined above. Rather, he seeks to avoid their impact by relying upon certain facts relating to a refund received by National in 1947 with respect to the year 1944 as a result of a net operating loss carry-back adjustment from the year 1946, pursuant to section 3780 of the Code; and he contends that these facts bring into play a different period of limitations, founded upon section 276 (d).

In its return for 1946, National reported a net operating loss of $60,620.95 for that year. It filed an application under section 3780 (a) of the Internal Revenue Code for a tentative net operating loss carryback and an unused excess profits credit carry-back from the year 1946 to the year 1944. Pursuant to section 3780 (b), it received refunds from the Government in June 1947 of $14,629.52 in corporation

income tax, $19,528.70 in excess profits tax, and $1,098.13 in declared value excess-profits tax—totaling $35,256.35. These refunds exceeded the amounts of the deficiencies in income and excess profits taxes determined against National for the year 1944. Respondent contends that by reason of these refunds, the period of limitation for the assessment of the deficiencies against it, under the provisions of section 3780 (c) and section 276 (d) of the Internal Revenue Code, did not expire until March 1950, and under the provisions of section 311 (b) (1), the period for assessment of the deficiencies against petitioners as transferees did not expire until March 1951.

Subsection (a) of section 3780 provides that under specified circumstances a taxpayer may file an application for a tentative carry-back adjustment of the taxes for prior taxable years affected by a net operating loss carry-back or an unused excess profits credit carry-back. Subsection (b) provides in part that within a period of 90 days the Commissioner shall make a limited examination of the application to discover omissions or errors of computation, determine the amount of the increase or decrease in each tax attributable to such carry-back upon the basis of the application and examination, apply any decrease against unpaid taxes or deficiencies, and refund the remainder to the taxpayer. Subsection (c) provides as follows:

ASSESSMENT OF ERRONEOUS ALLOWANCES.—If the Commissioner determines that the amount applied, credited or refunded under subsection (b) is in excess of the over-assessment attributable to the carry-back with respect to which such amount was applied, credited or refunded, he may assess the amount of the excess as a deficiency as if it were due to a mathematical error appearing on the face of the return, as provided in section 272 (f). * * *.

Section 276 (d) provides, to the extent here material, that in the case of a deficiency "attributable to the application to the taxpayer of a net operating loss carry-back or unused excess profits·carry-back, including deficiencies which may be assessed pursuant to the provisions of section 3780 (b) and (c)," such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the year of the net operating loss or unused excess profits credit may be assessed.

Respondent contends that, applying these provisions here, the period within which he could proceed against petitioners did not expire before March 1951, and that therefore his March 9, 1950, deficiency notices were timely. That contention is predicated upon the assumption that under these provisions the period within which he could assess a deficiency for 1944 is to be coextensive with the period applicable to 1946,[1]

---

[1] The period applicable to 1946 is three years after the filing of the returns plus an additional year for proceeding against transferees. Sections 275 (a) and 311 (b) (1). This would give respondent until March 1951 within which to assess a deficiency against transferees with respect to the year 1946, assuming that the return for 1946 had been filed in March 1947.

provided only that the deficiency did not exceed the amount of the section 3780 refund.

We are unable to agree with respondent's interpretation of these provisions. Of course, if the refund were erroneous by reason of an incorrect application of the carry-back adjustments authorized by section 3780, or by reason of an incorrect determination of the amount or existence of losses giving rise to the carry-back, then plainly respondent's position would be sound. For, such were the very types of situations which the legislation was intended to govern. But respondent is here attempting to invoke these provisions in order to correct an error in the tax reported for the earlier year to which the carry-back was applied—an error having nothing whatever to do with the circumstances giving rise to the carry-back or the statutory machinery for making it applicable to the earlier year.

Neither the language of the statute nor the legislative history supports respondent's position. Section 3780 (c), in providing for assessment of erroneous allowances is specifically limited to the situation where "the Commissioner determines that the amount applied, credited or refunded under subsection (b) is in excess of the over-assessment *attributable to the carry-back* with respect to which such amount was applied, credited or refunded * * *." (Emphasis added.) And throughout the report of the House Ways and Means Committee which accompanied the bill introducing these provisions, the inference is inescapable that they were intended merely to permit an enlargement of the period of limitations where the error giving rise to the deficiency was "attributable to the carry-back." [2] Nowhere is there any suggestion that liability for the earlier year is to be kept alive for all purposes (limited only by the amount of the refund or credit) for an additional period of years beyond the original period of limitations.

In determining the 1944 deficiencies, the only adjustment made by the respondent which was attributable to the application to National of a net operating loss carry-back or an unused excess profits credit carry-back amounted to $375.95, which resulted from an allowance of a net operating loss carry-back from 1946 of $60,245 in lieu of $60,620.95. Six other adjustments made by the respondent were attributable to his determination that National had not correctly reported its income and deductions in its 1944 return. To the extent that the deficiencies determined for 1944 against petitioners as transferees are attributable to these six adjustments, they are barred by sections 275 (a) and 311 (b) (1). To the extent that the deficiencies are attributable to the small adjustment made in the amount of the 1946 operating loss carry-back, the period of limitation contained

---

[2] Sections 3780 and 276 (d) were added to the Internal Revenue Code by sections 4 (a) and 5 (e) of the Tax Adjustment Act of 1945. See particularly the report of the House Ways and Means Committee, No. 849, 79th Cong., 1st Sess., pp. 28–29. 32–33.

in section 276 (d) is applicable and the assertion against petitioners as transferees of the portion of the deficiencies attributable to this adjustment was timely. But the respondent has not sustained his burden of proving that they are liable as transferees of National for such deficiencies. National in June 1948 paid to the bankruptcy court only $35,000 of the $38,952.12 it had received from petitioners in April 1948. The difference of $3,952.12 was more than sufficient to satisfy any deficiencies attributable to the small adjustment made in the 1946 operating loss carry-back, and respondent, upon whom the burden of proof lies in this connection, has not shown that National did not retain that difference.

3. In the alternative, respondent contends that even if sections 3780 and 276 (d) did not enlarge the period of limitations within which to proceed against petitioners as transferees, they are liable as fiduciaries under section 3467 of the Revised Statutes,[3] and that such liability is not barred by limitations.

The liability of petitioners as fiduciaries was asserted by the respondent in an amendment to answer filed with this Court on May 23, 1951. The facts alleged in support of this affirmative allegation are that petitioners at all times material herein were officers and principal stockholders of National; that National on March 15, 1945, and March 15, 1946, became liable for the payment of income and excess profits taxes aggregating $20,042.58 which have never been paid; that in May or June 1948 National received cash in the approximate amount of $40,000[4] representing the repayment of a loan owed to it by petitioners; that at that time this $40,000 represented and constituted the sole asset of National; that petitioners then knew that unpaid taxes of $20,042.58 were outstanding and overdue; that the $40,000 constituted a trust fund in the hands of petitioners for the benefit of creditors of National, including the respondent herein; that petitioners, as officers of National and as trustees, did not use the $40,000 to pay debts due the United States. Respondent alleges further that petitioners, as officers and trustees, turned the sum of $40,000[5] over to themselves as individuals and applied this sum for their own use and benefit, i. e., they employed this money to salvage their interests in Leuthesser Brothers, a partnership in which they had equal interests, and which was then the subject of a bankruptcy proceeding pending in the United States District Court for the

---

[3] SEC. 3467 (As Amended). LIABILITY OF FIDUCIARIES.

Every executor, administrator or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid.

[4] The amount, as shown by the proof, actually was $38,952.12.

[5] The proof showed, and we have so found, that only $35,000 was turned over to the bankruptcy court for the benefit of the creditors of Leuthesser Brothers.

Northern District of Illinois; and that by so doing they rendered National insolvent and wholly without assets, and rendered themselves personally, and jointly and severally, liable for the payment of the $20,042.58 in tax plus interest thereon under the provisions of section 3467 of the Revised Statutes.

The statutory machinery for the collection of deficiencies is made applicable by section 311 (a) (2) of the Internal Revenue Code to the enforcement of fiduciary liability created by section 3467 of the Revised Statutes in respect of payment of "tax from the estate of the taxpayer."[6] And, on the assumption that petitioners incurred liability under section 3467 of the Revised Statutes, respondent argues that his action was timely.[7]

Petitioners contend that the facts alleged or proved do not bring this case within section 3467 of the Revised Statutes. We agree.

Passing the question whether petitioners were the kind of fiduciaries covered by the statute, it is plain that there has not been compliance with its terms. Section 3467 applies where the fiduciary "pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate." Both the allegations and proof are clear that the payment made by petitioners which is alleged to render section 3467 applicable was not a payment of any debt of National. The payment was made for the benefit of creditors of petitioners' partnership. Such payment might have resulted in transferee liability against petitioners had respondent proceeded in time.

---

[6] Section 311 (a) (2) provides:

(a) METHOD OF COLLECTION.—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter * * *:

\* \* \* \* \* \* \*

(2) FIDUCIARIES.—The liability of a fiduciary under section 3467 of the Revised Statutes, as amended, (U. S. C., Title 31, Section 192) in respect of the payment of any such tax from the estate of the taxpayer.

Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.

The words "the estate of the taxpayer" suggest that these provisions may be inapplicable to situations such as this one, where the alleged fiduciaries were not acting in a representative capacity, as in the case of a decedent's estate, but merely had possession and control of assets of their corporation. However, it is not necessary to meet this question in view of the decision that we reach with respect to the applicability of section 3467 to the facts of this case.

[7] Section 311 (b) (3) of the Internal Revenue Code provides:

(b) PERIOD OF LIMITATION.—The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

\* \* \* \* \* \* \*

(3) In the case of the liability of a fiduciary,—not later than one year after the liability arises or not later than the expiration of the period for collection of the tax in respect of which such liability arises, whichever is the later;

Accordingly, since the taxes herein were in fact timely assessed against National on February 13, 1948, and since collection of the taxes thus assessed may be made within six years thereafter (Section 276 (c)), respondent's action here would be timely under Section 311 (b) (3) if petitioners are liable under Section 3467 of the Revised Statutes.

But it plainly did not fall within the terms of section 3467.[3]  *L. T. Mc-Court*, 15 T. C. 734, relied upon by respondent is perhaps distinguishable on its facts; however, if it is taken to hold that a distribution by a fiduciary not in payment of the taxpayer's debts falls within section 3467, it is not justified by the language of the statute and to that extent will not be followed.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

[3] In holding that petitioners are not liable in these proceedings as transferees or fiduciaries, we do not mean to suggest that, if they are still indebted to National and such indebtedness may be treated as an asset of National, the Government may not have a means of reaching such asset in an appropriate proceeding brought to effect collection of the assessment that was made against National on February 13, 1948.