FRANK B. POLACHEK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35727. Filed July 9, 1954.

*Frank B. Polachek, pro se.*
*James J. Quinn, Esq.*, for the respondent.

860

**OPINION.**

ARUNDELL, *Judge:* We have already decided that commodity future contracts, which are bought and sold for one's own account and which are not hedging transactions, are capital assets, and subject to the capital loss limitations of section 117 (d) of the Internal Revenue Code. *Modesto Dry Yard, Inc.,* 14 T. C. 374; *Tennessee*

*Egg Co.*, 47 B. T. A. 558; *Commissioner* v. *Covington*, (C. A. 5) 120 F. 2d 768.

The petitioner attempts to avoid the above rule by arguing that he was engaged in the trade or business of buying and selling futures contracts during the 4 critical months of 1947 in which the losses in issue occurred. He contends that during this period he devoted himself exclusively to trying to make his living from the profits on these transactions. He claims that his intensive application to this endeavor, to which he committed all his capital, qualifies his activity as his trade or business during this period and, consequently, such losses as he suffered are fully deductible as ordinary losses under section 23 (e) of the Code.

However, the general provisions of section 23 (e) must be read in connection with the more specific provisions of section 117. We may assume, *arguendo*, that petitioner's activity in connection with the purchase and sale of commodity futures contracts did constitute a business, but it does not follow that the gains and losses resulting therefrom must be treated as other than capital gains and losses if the contracts themselves are capital assets under section 117 (a). We think that they must be so considered unless petitioner be regarded as a dealer in such contracts, holding them on purchase for sale to customers in the regular course of his business.

In our opinion, during these months of April, May, June, and July, petitioner was merely a speculator in the futures markets, hoping on the basis of a quick flyer to reap substantial gains. He certainly was not a dealer in these contracts. At the most, his activity was that of a trader of whom we said in *George R. Kemon*, 16 T. C. 1026, at 1033:

Contrasted to "dealers" are those sellers of securities who perform no such merchandising functions and whose status as to the source of supply is not significantly different from that of those to whom they sell. That is, the securities are as easily accessible to one as the other and the seller performs no services that need be compensated for by a mark-up of the price of the securities he sells. The sellers depend upon such circumstances as a rise in value or an advantageous purchase to enable them to sell at a price in excess of cost. Such sellers are known as "traders."

In the *Kemon* case, we held that the gains realized by a trader in his market operations were capital gains. Conversely, where a trader's operations result in losses, as here, we think such losses are capital losses and the limitations of section 117 (d) apply.

Beginning in the latter half of 1947, the petitioner turned his attention to establishing his proposed investment advisory service. The business was never formally organized and never actually operated. However, petitioner tried to get the service going and devoted considerable time and money to the project until, in the spring of 1948, he abandoned the idea and took a new job. The expenditures made by

the petitioner in 1947, in the amount of $554, in his attempt to establish his service are sought as deductions.

It is not quite clear whether the petitioner attempts to establish his right to a deduction as an ordinary loss under section 23 (e) or as business operating expenses under section 23 (a) (1) (A). He freely admits in his testimony and again on brief that he did not give up on the project until 1948 and even suggests, on brief, that the expenses should be deducted as a loss in 1948—the year in which the project was abandoned. On the other hand, certain passages in his brief seem to suggest that he maintains the expenses are deductible in 1947 under section 23 (a) (1) (A). The latter position is the one to which the respondent addresses himself.

We think that the petitioner's expenses cannot be deducted in 1947 under the authority of section 23 (a) (1) (A). So far as it would be material here, that subsection permits the deduction of the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. But the petitioner had no business in 1947. At the most, during the period now under consideration, he merely had plans for a potential business. His plans never materialized. *George C. Westervelt*, 8 T. C. 1248, 1252; *Morton Frank*, 20 T. C. 511. Regardless of the time he may have devoted to the project, or the expense in attempting to attract associates and capital and soliciting prospective clients, we think that petitioner's idea was still in its formative stages when it was finally abandoned.

The year 1948 is not before us. Consequently, we need not consider whether the expenditures made on the proposed investment service are deductible as a loss under section 23 (e) in that year when the project was abandoned.

Having upheld the respondent's determinations disallowing the claimed losses and deductions for 1947, the petitioner's income tax return for 1947 as reconstructed by the respondent now shows a net income for the year instead of the net loss originally reported by petitioner. Thus, the petitioner is not entitled to the refund in his tax for 1945 which he received on the basis of the apparent net loss carryback resulting from the net loss appearing on the face of his return for 1947. The respondent has determined a deficiency for 1945 in the amount of the refund which the petitioner received.

The petitioner objects to the claimed deficiency for 1945 on the basis, generally, of the statute of limitations, section 275 (a) of the Code, although he admits that the deficiency for 1945 results from and is equal to the refund he received for that year. If we understand correctly petitioner's position, he contends that, if the respondent changes his mind on the refund granted under section 3780 (a), he must proceed under section 272 (f) to assess the refunded amount as if it were a mathematical error on the face of a return. This pro-

cedure, the petitioner admits, would not permit him to appeal to this Court.[1] However, he argues that the respondent must proceed to assess the amount refunded in this manner within the period of limitation prescribed in section 275 (a) for assessment of a deficiency for the year in which the loss occurred which resulted in the refund.

In this case, the respondent did not assess the amount refunded as though it were a mathematical error. Instead, he issued a standard notice of deficiency under section 272 (a) in which he notified the petitioner of the claimed deficiency for both years and identified the basis for the deficiencies for the 2 years. The petitioner contends that the statute of limitations prescribed in section 275 (a) bars the respondent from claiming any deficiency for the year 1945.

The weakness in petitioner's position is that it fails to give effect to the provisions of section 276 (d). The carry-back credit and refund provisions were added to the Code by the Tax Adjustment Act of 1945 (P. L. 172, 79th Cong., 1st Sess., 59 Stat. 517). In the course of consideration, Congress realized that the short period of 90 days under section 3780 within which the Commissioner had to act on the claim for refund might not give adequate time for review of all the facts pertaining to the right to the refund. Consequently, the Congress simultaneously added section 276 (d) which provided that the Commissioner could proceed to collect the amount refunded as a deficiency in an earlier year within the period of limitation applicable to the year in which the net operating loss occurred.

The report of the Committee on Ways and Means covering the Tax Adjustment Act of 1945, H. Rept. No. 849, 79th Cong., 1st Sess. (1945) pp. 26, 32, contains the following illuminating passages:

> It is to be noted that the method provided in subsection (c) of section 3780 to recover any amounts applied, credited, or refunded under section 3780 which the Commissioner determines should not have been so applied, credited, or refunded is not an exclusive method. It is contemplated that the Commissioner will usually proceed by way of a deficiency notice in the ordinary manner, and the taxpayer may litigate any disputed issues before The Tax Court. The Commissioner may also proceed by way of a suit to recover an erroneous refund.
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> new section 276 (d) provides that a deficiency attributable to a net operating loss carry-back &ast; &ast; &ast;, including those amounts which may be assessed pursuant to the provisions of section 3780 (b) and (c), may be assessed at any time prior to the expiration of the period within which a deficiency may be assessed with respect to the taxable year of the claimed net operating loss &ast; &ast; &ast;.

Our understanding of these provisions is amplified in *Edward G. Leuthesser*, 18 T. C. 1112, 1125, where we held that sections 276 (d)

---

[1] Secs. 272 (f) and 3780 (c), I. R. C.

and 3780 (c) authorize the Commissioner to assess a deficiency arising out of an erroneous carry-back allowance any time within the period that he could access a deficiency for the year on which the allowance was based. Cf., also, *Ione P. Bouchey*, 19 T. C. 1078. In this case, the refund was attributable to a carry-back loss based on the year 1947. The petitioner consented to assessment for 1947 any time up to June 30, 1952. The deficiency notice was mailed on April 16, 1951, well within the period of limitation, as extended. Consequently, the deficiency notice is timely insofar as it claims a deficiency for 1945 in the amount of the refund attributable to an erroneous carry-back credit based on an alleged net loss for 1947.

*Decision will be entered under Rule 50.*