OPINION. KeRN, Judge: The sole remaining issue in this case is whether the $5,000 paid by petitioner to U. L. I. in 1952 is deductible as an ordinary and necessary business expense under section 23 (a) (1) (A), as an expense for the production of income under section 23 (a) (2), or as a loss under section 23 (e). The Commissioner contends that petitioner was not engaged in a trade or business to which this expenditure was proximately related. He argues that this survey was for the purpose of determining whether petitioner should enter a particular trade or business, and had no connection at its inception with any transaction entered into for profit, or in the course of his trade or business. Petitioner argues that since his business was that of developing and promoting real estate developments and since he had used the 17. L. I. services previously in this business this survey was an ordinary and necessary business expense. We agree with respondent that petitioner used this survey as a means of determining whether he should enter a new business. Petitioner’s business for a number of years prior to 1951 was that of being an officer and director of both Cameron Village, Inc., and the York Building Company, which had developed and built the Cameron Village Shopping Center and residential development. He also participated in some residential development as an individual. Assuming, arguendo, that petitioner’s trade or business was that of promoting and developing shopping centers and residential developments, there is no evidence that this trade or business ever encompassed industrial developments such as those contemplated by Mc-Ginnis and R. D. C. Petitioner’s experience had been limited to residential and shopping center developments. Indeed, when approached by McGinnis, he indicated his lack of knowledge of the industrial real estate picture, and requested a U. L. I. survey before he would entertain the proposition put forth by McGinnis. Petitioner was well aware that different factors were involved in an industrial development. He candidly admitted his lack of experience with such factors. The very nature of the survey was that of a preliminary investigation, the purpose of which, as conceived by petitioner, was to overcome his lack of knowledge of the factors involved in such developments. Petitioner stated at the hearing of this case: I told Mr. McGinnis of the various councils of the Urban Land Institute and how they operated and that I would like to get a panel; that I had never had any experience in developing industrial property, that all my experience had been in residential and shopping centers. I told him there were different problems in industrial development and I wanted to get a panel to come down and study the situation and if it looked encouraging then I would like to go into it; but if it was not, then I would not be interested in it. As further evidence of the specialization within the real estate development field it is only necessary to inspect the operation of the U. L. I. U. L. I. operates three separate and distinct panels covering three separate and distinct real estate areas, i. e., The Community Builders’ Council, The Industrial Council, and The Central Business District Council. In our opinion it is readily apparent that the trade or business of promoting and developing residential and shopping center areas is separate and apart from that of promoting and developing industrial acreage, and that petitioner’s trade or business at the time of the survey was restricted to promotion and development of residential and shopping center properties. Expenditures made in investigating a potential new trade or business and preparatory to entering therein are not deductible under section 23 (a) (1) (A). George C. Westervelt, 8 T. C. 1248 (1947); Morton Frank, 20 T. C. 511 (1953); Frank B. Polachek, 22 T. C. 858 (1954). We have already concluded that at the time the U. L. I. survey was being conducted petitioner was not in the trade or business of promoting and building industrial developments. In our opinion, therefore, this expenditure falls within the doctrine set forth in George C. Westervelt, supra, and is not deductible under section 23 (») (1) (A). The preliminary nature of the investigation also precludes deduction of this expenditure under section 23 (a) (2). This survey could not of itself lead to the production or collection of income. There was no existing interest or right here that had to be protected. Rather, this expenditure looked to the creation of a new interest or right and as such is not deductible under section 23 (a) (2). McDonald v. Commissioner, 323 U. S. 57 (1944). Nor can petitioner deduct this expenditure as a loss under section 23 (e). Petitioner was not in the trade or business of promoting and developing industrial properties, and we are unable to agree that this survey was itself a transaction entered into for profit. There was no transaction entered into for profit by petitioner -until after the survey had been made, when petitioner purchased the shares of those R. D. C. stockholders who objected to the Westinghouse transaction. The question of gain or loss from that transaction is not involved herein. At the time of the survey the negotiations between petitioner and McGinnis “were in a strictly talking stage.” It is clear from the evidence that the U. L. I. survey was to be the determinative factor in deciding whether petitioner would continue negotiations with Mc-Ginnis. Petitioner had not made any agreement concerning this new field of business and would not make any such agreement until the survey was completed. We conclude that petitioner cannot deduct this expenditure in 1952 under the applicable provisions of the 1939 Code. Decision will be entered under Bule SO.