Rubin Hess and Marilyn Hess v. Commissioner.
Hess v. Commissioner
Docket No. 4822-70 SC.
United States Tax Court
T.C. Memo 1971-242; 1971 Tax Ct. Memo LEXIS 90; 30 T.C.M. (CCH) 1043; T.C.M. (RIA) 71242; September 23, 1971, Filed. Rubin Hess and Marilyn Hess, pro se, 125 1/2 S. Sycamore Ave., Los Angeles, Calif.Allan D. Hill, for the respondent. JOHNSTON Memorandum Findings of Fact and Opinion JOHNSTON, Commissioner: Respondent determined a deficiency of $597.89 in petitioners' Federal income tax for the year 1967. The issues for decision are (1) whether petitioners are entitled to certain claimed charitable deductions under the provisions of section 170 [1] of the Internal Revenue Code of 1954(2) whether petitioner Marilyn Hess incurred certain expenses in the trade or business of being an entertainer during the taxable year 1967 which are deductible under the provisions of section 162 or (3) whether such expenses are deductible under section 212 as expenses incurred for the production or collection of income. Findings of Fact Some of the facts have been stipulated and they are so found. Petitioners, husband and wife, *92 were residents of Los Angeles, California when they filed their petition. On petitioners' joint 1967 Federal income tax return, an attached schedule of deductions listed the following amounts as contributions: Synagogue
$100
Salvation Army
250
Other Organized Charities
125
State of Israel
200
Macabee Athletic Club 204
$879
Respondent disallowed claimed charitable contributions during 1967 in the amount of $424. Respondent allowed the petitioners deductions for a non-cash contribution to the Veterans' Salvage Shop in the amount of $250, for a $1 contribution to the Heart Fund and for mileage incurred by Rubin Hess as a Macabee athletic coach in the amount of $204. Rubin Hess made a contribution of $200 to the State of Israel. This contribution was made at a rally which he attended in Los Angeles at about the time of the outbreak of the Arab-Israeli War. Marilyn Hess began performing as a professional entertainer in 1950 at the age of five. She performed mostly on the East Coast as a member of a trio until her family moved to California in 1963. After a short time the trio disbanded because of lack of work on the West Coast. She was employed as a *93 singer with a group called the "Young Americans" from Fall 1964 through March 1965 and which toured around the United States with Johnny Mathis. In May or June of 1965 the group was booked in the Melody Land Theatre with Tennessee Ernie Ford. This was the only work performed in 1965. Petitioners were married on June 12, 1965. At some period during 1966, Marilyn Hess appeared with the "Young Americans" at the Greek Theatre in Hollywood with Judy Garland who became ill so that the show ran for not more than two weeks. She also appeared at a benefit performance at the Hollywood Bowl for one night. She had no other employment as an entertainer in 1966. In 1967 Marilyn Hess was employed as a clerical worker at Beverly Stationers, J. Rotell, Temporarily Yours and B&B Typewriter Company. The employment at 1044 B&B Typewriter Company was full time as a clerk. She worked there eight hours a day for five days a week. The annual compensation she received from B&B Typewriter Company was $3,559.39 in 1967. Her salary ranged between $75 and $85 per week while so employed. On petitioners' joint Federal income tax return for 1967 they reported $100 as "income as entertainer" and took deductions *94 for claimed unreimbursed business expenses of Marilyn Hess necessary for the production of income as follows: Description
Amount
Accompanists, Sheet Music & Records
$175.00
Hair Styling
260.00
Make up
364.00
Parking
72.00
Periodicals & Trade papers
104.00
Professional Photos
76.00
Rent
390.00
Telephone, Telegraph, Cable
144.00
Theatre & Movie Tickets for business
520.00
Costume Wardrobe Maintenance
158.00
Wigs and Hair Pieces
35.00
Coaching 60.00
Total
$2,358.00
Marilyn Hess took an honorary withdrawal in 1967 from a union called the American Guild of Variety Artists in which she had held membership since age five. She had neither a manager nor an agent in 1967. No deduction was claimed by Marilyn Hess for union dues payments to American Guild of Variety Artists in 1967. Ultimate Findings of Fact Petitioner Marilyn Hess was not engaged in the trade or business of entertaining in 1967 and did not incur any of the claimed expenses for the production or collection of income. Opinion On their 1967 Federal income tax return, petitioners deducted claimed charitable contributions of $879. The District Director allowed petitioners *95 $455 made up of a noncash contribution of $250 to the Veterans' Salvage Shop, a $1 contribution to the Heart Fund and mileage in the amount of $204 incurred by Rubin as a Macabee athletic coach. In the statutory notice of deficiency for 1967, respondent disallowed $424 of petitioners' claimed contributions. These disallowed items were designated on the return as $200 cash contribution to the State of Israel, a $100 cash contribution to a synagogue and $124 in cash contributions to Other Organized Charities. On trial, petitioners apparently abandoned their claimed deductions of $250 to the Salvation Army and $124 to Other Organized Charities but raised the amount claimed to have been contributed to the State of Israel to $250 and claimed that the remainder of the $424 or $174 had been given to various synagogues. Section 170 of the Internal Revenue Code of 1954 states: (1) GENERAL RULE - There shall be allowed as a deduction any charitable contribution (… ) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. The name *96 of each organization to which a contribution was made and the amount and date of actual payment of each contribution should be stated in the tax return. However, where numerous contributions were made to one organization during the taxable year, only the organization's name and the total amount of the cash contributions need be shown. Income Tax Regs. 1.170-1(a)(3). Not only was the necessary information omitted from the return, it was not even supplied at the trial. Petitioners offered no support for these alleged cash contributions to a synagogue or synagogues other than vague estimates. Rubin's testimony indicated that he attended several synagogues. He produced no receipts, records, cancelled checks or other specific evidence to substantiate any portion of the amount claimed. He gave no convincing explanation as to why he claimed $100 in contributions to a synagogue on their return and then at the trial claimed to have contributed a total of $174 to several synagogues. It is impossible on the trial record to determine the amounts, if any, given to any particular synagogue. The vague and conflicting testimony of Mr. Hess with respect to these alleged contributions can be given *97 little or no weight. His self-serving statements are not sufficient to substantiate the amount of the charitable contributions originally claimed or as increased at the trial. The $174 claimed to have been given as a charitable contribution to synagogues must be disallowed as a deduction on account of lack of substantiation. 1045 Petitioners claimed a charitable contribution of $200 to the State of Israel on their 1967 Federal income tax return which amount petitioners raised to $250 on trial. The type of organization which qualifies as a proper donee of a charitable contribution is limited by the Internal Revenue Code of 1954. Section 170(b)(1)(A)(i-viii). The government of a foreign country does not qualify as a recipient organization to which proper donations can be made. Section 170(c)(2)(A). If the organization was not created in the United States, a contribution thereto is not deductible under section 170 of the 1954 Code. Muzaffer ErSelcuk, 30 T.C. 962 (1958). The State of Israel is a foreign government obviously not created in the United States and any contribution to it is not allowable as a deduction under section 170 of the Internal Revenue Code *98 of 1954. Petitioners argue on brief that the contribution was given to a domestic organization described in Rev. Ruling 63-252, C.B. 1963-2, 101. Not only is there no record support for this argument, but the brief doesn't even suggest the name of any such organization. Accordingly, the petitioners have failed to show that the respondent erred with respect to the disallowance of the claimed charitable contributions. Marilyn Hess described her activities in 1967 in connection with theatre work somewhat as follows: I tried to find some work for myself. I even tried to put together a group of my own. I went to the musicians union because I didn't even know where to start. I tried to find work locally or anywhere really just to get some income. I figured if I got together a trio I would probably have more success. So, I just spent all of my time running around auditioning. I tried out for a number of choruses and other singing groups. I just kept in touch with everyone and started rehearsing with this group that I got together and nothing ever came of that - just a lot of auditions. Marilyn testified that she earned $100 in 1967 for entertaining before a group at its annual or *99 semi-annual dance in a temple auditorium in either Los Angeles or Hollywood. Petitioners claimed a deduction on their 1967 Federal income tax return in the amount of $2,358 which they denominated "Unreimbursed Expenses Necessary to Production of Income." Marilyn claims to have paid all of her disbursements in cash. Such records as she claimed to have had appear to have been inadequate - occasional receipts but no bookkeeping records. She testified that she hadn't thought too much about receipts and whatever receipts she did have were destroyed by a flood in their apartment in July 1968. She said that businesses patronized by her in 1967 were no longer in business so that she could not get duplicate receipts. However, she failed to testify as to the names and former addresses of such businesses. She produced no receipts, records or other specific evidence to substantiate any portion of the amount of her expenses "Necessary to Production of Income." Most of her testimony was only general, consisting of stated conclusions. Furthermore, the record does not show in what respect the claimed expenses were necessary to the production of income. Something more is required than mere statements *100 that the expenses were incurred. Cf. Betsy Lusk Yeomans, 30 T.C. 757 (1958). Practically all of the claimed expenses with the exception of those for an accompanist [2] and studio rent were for items which might normally be considered personal living expenses. [3] The record does not show how certain of these expenditures related to the total of all similar expenses for which a deduction was not claimed. For example, a deduction of $144 was claimed for mostly telephone calls, yet we do not know whether this constitutes the total telephone bill of petitioners or some part of it. It is difficult to believe that no personal telephone calls were incurred. For some reason, petitioners chose not to document their telephone expenses although Marilyn testified she made many long distance calls. Similarly, with respect to theatre and movie tickets and parking. Certainly other expenses, such as hair styling, make up, wigs and hair pieces are prima facie personal expense. Petitioner has produced no evidence which would lead to a different conclusion. We do not know whether the constumes for which a 1046 maintenance deduction is claimed were not suitable for personal or private *101 wear. Without going into further detail, we do not believe that petitioners have substantiated any of the items of claimed expenses necessary to the production of income nor have they proved their business necessity. And in any event, it would appear that when these expenses were incurred Marilyn was carrying on no trade or business. She was seeking new employment. Such expenses are not deductible. George A. Dean, 56 T.C. - No. 69, July 29, 1971; Frank B. Polachek, 22 T.C. 858 (1954), Morton Frank, 20 T.C. 511 (1953) and McDonald v. Commissioner, 323 U.S. 57 (1945) affirming 139 F. 2d 400 affirming 1 T.C. 738 (1943). [4]
*102 We think that her actions in 1967, demonstrate that she did not intend to pursue a theatrical career. We have found that she paid no union dues to the American Guild of Variety Artists in 1967. Moreover she actually withdrew from the union in that year. In addition she had neither a manager nor an agent in 1967. Finally, on the basis of her average weekly salary, it appears that she worked about 45 weeks in 1967 for the B&B Typewriter Company and practically a full year, when her other employment is considered, outside the entertainment industry. We think this shows that she did not intend to carry on a business of professional entertainer in 1967. We hold that Marilyn Hess was not in a trade or business in 1967 and we hold further that the expenses incurred by her and claimed as a deduction in her 1967 return were not incurred for the production of income. The petitioners have failed to sustain their burden of proof that the respondent erred in disallowing the deductions claimed by petitioners. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. References to Code sections are to the internal Revenue Code of 1954, as amended.↩
2. The record does not show the amount allegedly paid to the accompanist. ↩
3. Income Tax Reg. § 1.212-1 provides "Nontrade or nonbusiness expenses * * * (f) Among expenditures not allowable under section 212 are the following: Commuter's expenses; expenses of taking special courses or training; expenses for improving personal appearance; * * * expenses such as those paid or incurred in seeking employment or in placing oneself in a position to begin rendering personal services for compensation * * *. ↩
4. See Raymond Collier, a memorandum opinion of this Court, September 3, 1954.↩