WILLIAM F. SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 24578-81
United States Tax Court
T.C. Memo 1989-432; 1989 Tax Ct. Memo LEXIS 430; 57 T.C.M. (CCH) 1309; T.C.M. (RIA) 89432; August 16, 1989
Lewis H. Mathis and James M. Saxton, for *433 the petitioner. Matthew A. Lykken, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: On March 10, 1989, respondent filed a motion for summary judgment on the only issue remaining in controversy in this case after several stipulations of settled issues have been filed. The issue raised by the motion for summary judgment is whether the assessment of an increased deficiency claimed by respondent in an amendment to answer filed August 23, 1988, is barred by the period of limitations. The increased deficiency claimed by respondent in his amendment to his answer filed August 23, 1988, results from the disallowance of a net operating loss carryback of $ 74,335 from petitioner's 1979 taxable year to his 1976 taxable year which loss carryback had previously been tentatively allowed. The facts insofar as both parties agree to them are as follows. On August 18, 1981 respondent mailed a notice of deficiency to petitioner making several adjustments in petitioner's taxable income for the year ended December 31, 1976 and determining a deficiency for that year of $ 27,191.33. In this notice, respondent allowed petitioner a net operating loss deduction for *434 the year 1976 in the amount of $ 74,335 with the following explanation: It is determined that you are entitled to a net operating loss deduction in the amount of $ 74,335.00 for 1976. This net operating loss deduction is carried back from your tax year ending 12-31-79 and is being allowed in this return. However, the net operating loss deduction reflected herein is subject to correction upon examination of the tax return from which it originated. On September 25, 1981 petitioner filed his petition in this case assigning a number of errors in respondent's determinations set forth in the notice of deficiency mailed August 18, 1981. Petitioner was a resident of Little Rock, Arkansas at the time the petition was filed. On May 22, 1980 petitioner filed an Application for Tentative Refund (Form 1045) showing a net operating loss of $ 74,355 [sic] for petitioner's taxable year ending December 31, 1979 and requesting a carryback of this loss to petitioner's 1976 taxable year. The application for tentative refund was granted and a refund check was issued on July 7, 1980. Subsequent to the issuance by respondent of the notice of deficiency to petitioner for the year 1976, respondent *435 examined petitioner's 1979 Federal income tax return. The result of the examination was a proposal of several adjustments which were sufficient to result in no loss for the year 1979, but a deficiency of $ 32,078 for that year. On April 10, 1986, petitioner and respondent signed a Form 870-AD whereby petitioner agreed to the deficiency of $ 32,078 determined by respondent. On May 26, 1986, this deficiency was assessed. Among the adjustments agreed to by petitioner for the year 1979 is a $ 99,643 increase in petitioner's distributive income from the partnership James Associates, Ltd. This partnership is the same James Associates, Ltd. partnership for which an adjustment was made in the year 1976 and which is referred to in a Form 872-A, Special Consent to Extend the Time to Assess Tax, which was executed by the parties in June 1980. Petitioner filed a Federal income tax return for the calendar year 1976 on April 15, 1977. On October 22, 1979 petitioner signed a Consent to Extend the Time to Assess Tax due on any return for the year ended December 31, 1976 to any time on or before December 31, 1980. This consent form was signed on behalf of respondent on October 23, 1979. *436 In June 1980, petitioner signed a Special Consent to Extend the Time to Assess Tax due on any return filed for the period ending December 31, 1976 until such time as the Internal Revenue Service received a Form 872-T or mailed to petitioner a notice of deficiency. This Form 872-A was received by respondent's office in Little Rock on June 2, 1980 and was signed on behalf of respondent on June 2, 1980. The Form 872-A signed in June 1980 carried the following provision: The amount of any deficiency assessment is to be limited to that resulting from any adjustment to the distributive shares from: James Assoc. Ltd.
EIN: 71-0484108 Silverton 1976 EIN: 71-0484104 and includes any amount resulting from statutory computations or recomputations based on such adjustment. The provisions of Section 6511(c), Internal Revenue Code of 1954, are limited to any refund or credit resulting from adjustment for which the period for assessment is extended under this agreement. One of the adjustments in the notice of deficiency for the year 1976 was to increase petitioner's reported income by disallowing to the extent of $ 20,133.98 petitioner's claimed loss from *437 the partnership James Associates, Ltd. The parties are in agreement that petitioner did not have a net operating loss for the year 1979 to carry back to the year 1976 or any other year. Petitioner, however, contends that the increased deficiency claimed by respondent, based on the reversal of the tentative allowance of the net operating loss carryback from 1979 in the year 1976, is barred by the period of limitations. It is respondent's position that the increased deficiency resulting from the disallowance of the previously allowed net operating loss is not barred for two reasons. First, respondent points out that at the time the notice of deficiency for the year 1976 was mailed on August 18, 1981, the three-year period of limitations for petitioner's taxable year 1979 had not expired, and that, therefore, the period of limitations under section [1] 6501(h) for adjusting the net operating loss for the year 1976 had not expired. Respondent further takes the position that since the 1979 loss was completely wiped out by the disallowance of a $ 99,643 loss from James Associates, Inc., claimed in 1979, the period of limitations for the year 1976 had not expired for disallowance of *438 the previously allowed loss carryback from 1979 under the provisions of the special consent executed by the parties in June 1980. Petitioner contends that since the period for assessment of a deficiency for the year 1979 was not open under section 6501 on August 23, 1988, when respondent filed his amendment to answer claiming an increased deficiency for 1976, the claimed increased deficiency asserted in this amendment to answer was barred. It is petitioner's position that the running of the period for assessment of the claimed increased deficiency was not suspended under the provisions of section 6503 when the notice of deficiency was mailed on August 18, 1981, or the petition filed on September 25, 1981, since respondent was not prohibited from making an assessment of the erroneously allowed net operating loss carryback under the provisions of section 6213(b)(2) and (3). [2] Petitioner states that since a deficiency arising from an erroneous allowance of a tentative loss carryback may be assessed as a mathematical error without the *439 necessity of sending a notice of deficiency, section 6503 does not suspend the running of the period of limitations on assessment of a deficiency arising from such disallowance. *440 Respondent points out that we have held that the Commissioner may elect between the assessment of the deficiency occasioned by a carryback of a net operating loss under section 6213(b)(3) or use of the standard deficiency proceedings, including amendment of an answer. Neri v. Commissioner, 54 T.C. 767, 771 (1970); Polachek v. Commissioner, 22 T.C. 858, 863-865 (1954). Respondent further points out that it has long been settled that he may claim an increased deficiency at or before trial even though the period of limitations has otherwise expired for an additional assessment for the year in issue at the time the claim is made. Bruno v. Commissioner, 72 T.C. 443, 446 (1979). In Teitelbaum v. Commissioner, 346 F.2d 266, 267 (7th Cir. 1965), affirming a Memorandum Opinion of this Court, the Court stated: Where the original notice of assessment was timely mailed and the petition based thereon was filed within the allowed time, expiration of the statutory period of limitations does not bar assertion of claims for additional deficiencies in the pleadings prior to hearing if * * * the claims could have been asserted *441 in the original notice of deficiency. [Citations omitted.] The question here is, therefore, could respondent have asserted the claim for the increased deficiency resulting from disallowance of the loss carryback from 1979 to 1976 in the notice of deficiency mailed on August 18, 1981. We agree with respondent that he could have asserted the claim for the increased deficiency due to disallowance of the previously allowed loss carryback in the notice of deficiency. The period of limitations for determining a deficiency by reason of a loss carryback to the year 1976 from the year 1979 had not expired under the provisions of section 6501(h) at the time of the mailing of the notice of deficiency. This period of limitations was suspended until a decision of this Court becomes final when a petition was filed from the notice of deficiency. Section 6503 provides that the running of the period of limitations provided in section 6501 shall, after the mailing of the notice of deficiency, be suspended for the period during which the respondent is prohibited from making the assessment or from collecting by levy or proceeding in court "(and in any event, if a proceeding in respect of the deficiency *442 is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final)," and for 60 days thereafter. Clearly section 6503 provides for the suspension of the running of the period of limitations contained in any subsection of section 6501 and not merely the period provided in section 6501(a). Section 6503 provides that "in any event" if a proceeding with respect to the notice of deficiency is placed on the docket of the Tax Court the period of limitations is suspended until the decision of the Tax Court becomes final and for 60 days thereafter. In our view, it is unnecessary to discuss what might have been the situation had the period of limitations under section 6501(h) for assessment of a deficiency for 1976 expired after the issuance of the notice of deficiency but before 60 days after the 90-day period during which a petition might be filed with this Court, if no petition had been filed. The parenthetical language in section 6503 "(and in any event, if a proceeding with respect to the deficiency is placed on the docket of the Tax Court until the decision of the Tax Court becomes final)," does not specifically refer to the period during which respondent *443 is prohibited from making an assessment although generally respondent is prohibited from assessing a tax during the pendency of a case in the Tax Court. In our view, therefore, the period for assessing a deficiency for 1976 occasioned by the disallowance of a loss carryback from 1979 had not expired when the petition with the Tax Court was filed and the period was suspended until our decision in this case becomes final and for 60 days thereafter. As the parties recognize, no decision has been entered in this case. Since we have concluded that because of the provisions of section 6501(h) and section 6503 the period of limitations had not expired when respondent's amendment to answer claiming the increased deficiency was filed, it is not necessary to discuss whether the period of limitations for assessment of a deficiency was otherwise open when the amendment to answer was filed. However, because of the emphasis that petitioner has placed on the issue, and since in our view the provisions of the special consent are unambiguous, we will discuss this aspect of the case. Petitioner contends that at the time he signed the special consent for 1976 his representative was aware that *444 he had filed an application for tentative refund based on a loss carryback from 1979 to 1976 which loss was due to an appreciable extent to deductions involving James Associates, Ltd. Petitioner contends that in advising him to sign the special consent his representative did not have in mind extending the period of limitations for 1976 for an adjustment in 1979 of items with respect to James Associates, Ltd., but only to extend the period of limitations for such adjustments for items shown on the 1976 return. Petitioner attached to his objections to respondent's motion an affidavit to this effect signed by petitioner's former representative. First it is to be noted that petitioner, himself, signed both agreements to extend the period of limitations for the year 1976. Petitioner's former representative does not state that he shared his thoughts with respect to the limitations of the special consent with petitioner. However, if in our view the special consent agreement was ambiguous, we might consider it necessary if this consent was the sole basis for holding the period of limitations not to have expired when respondent's amendment to answer was filed, to hold that a summary judgment *445 was not appropriate since a material issue of fact existed. Respondent takes the position that the consent was with respect to any adjustment involving James Associates, Ltd. and not specifically limited to adjustments for distributive gain or loss from James Associates, Ltd. claimed in the year 1976. Respondent states that at the time the special consent was signed both petitioner and respondent were unaware of how the claimed distributable loss from James Associates, Ltd. for the year 1979 might affect petitioner's 1976 income. The investigation by respondent of petitioner's 1979 return had not been completed or perhaps even undertaken at the time and the reason the extension of the period of limitations was needed was because the investigation of the income and losses of James Associates, Ltd. had not been completed. In order for summary judgment to be appropriate, the party proposing the summary judgment must show that there is no genuine issue as to any material fact and that the Court can make a determination as a matter of law. Estate of Graves v. Commissioner, 92 T.C. (June 19, 1989); *446 Jacklin v. Commissioner, 79 T.C. 340, 344 (1982); Shiosaki v. Commissioner, 61 T.C. 861, 863 (1974). We have considered a number of cases involving whether a consent to extend the period of limitations was valid. As we have pointed out on a number of occasions, a consent to extend the period of limitations is not a contract, but a waiver by the taxpayer of a defense. However, contract principles do to some extent apply since the statute requires that the parties reach a written agreement. As we stated in Kronish v. Commissioner, 90 T.C. 684, 693 (1988), "it is the objective manifestation of mutual consent as evidenced by the parties' overt acts, not the parties secret intentions, that determine whether the parties have made an agreement." In the Kronish case the taxpayer was contending that the original consent she signed was not an agreement because respondent caused her to believe that the form would cover a different type of adjustment than it in fact covered. The taxpayer in that case stated her representative would not have *447 permitted her to sign the consent if he had known it would cover adjustments other than the one respondent caused her to believe it would cover. Based on the clear wording of the agreement, we held that the consent was not limited in the way the taxpayer contended. For many years, we have held that an unambiguous consent is binding on the parties in accordance with its clear language. Constitution Publishing Co. v. Commissioner, 22 B.T.A. 426 (1931). See the discussion of a consent which is ambiguous as compared to one which is unambiguous, as well as the effect of mutual mistake on an unambiguous consent, in the recently Court-reviewed opinion in Woods v. Commissioner, 92 T.C. 776 (1989). In our view, the words in the special consent form with respect to the year 1976 that "the amount of any deficiency assessment is to be limited to that resulting from any adjustment to the distributive shares from James Associates, Ltd." (Emphasis supplied), are clear that any deficiency resulting from any adjustment to the distributive shares of petitioner from James Associates, Ltd. might be assessed at any time under the consent form. This consent *448 form was in effect on August 18, 1981, when the notice of deficiency was issued. If there had been any intention to limit an adjustment to the amount of the distributive shares of gain or loss from James Associates, Ltd. for the year 1976, the agreement could well have so provided. The clear wording of the consent form is that a 1976 deficiency might be assessed at any time if it arose from any adjustment for any year from James Associates, Ltd. We, therefore, also consider the period of limitations with respect to the disallowance of a loss carryback resulting from an adjustment to petitioner's distributive share from James Associates, Ltd. for the year 1979 was open for the year 1976 under the special consent when the notice of deficiency was mailed. We, therefore, do not consider any disputed fact as to the secret intent of petitioner's representative at the time the special consent was signed to be material to the issue in this case. Therefore, there is no disagreement as to a material fact in this case. See Russello v. Commissioner, T.C. Memo. 1989-391. An order granting respondent's motion for summary judgment will be entered and decision will be entered *449 under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue.↩
2. Section 6503(a) provides: (a) Issuance of Statutory Notice of Deficiency.-- (1) General Rule. -- The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or the collection by levy or a proceeding in court, in respect of any deficiency as defined in section 6211 (relating to income, estate, gift and certain excise taxes), shall (after the mailing of a notice under section 6212(a)) be suspended for the period during which the Secretary is prohibited from making the assessment or from collecting by levy or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter. (2) Corporation joining in consolidated income tax returns. -- If a notice under section 6212(a) in respect of a deficiency in tax imposed by subtitle A for any taxable year is mailed to a corporation, the suspension of the running of the period of limitations provided in paragraph (1) of this subsection shall apply in the case of corporations with which such corporation made a consolidated income tax return for such taxable year. And section 6213(b)(1), (2) and (3) states: (b) Exceptions to restrictions on assessment. -- (1) Assessments arising out of mathematical or clerical errors. -- If the taxpayer is notified that, on account of a mathematical or clerical error appearing on the return, an amount of tax in excess of that shown on the return is due, and that an assessment of the tax has been or will be made on the basis of what would have been the correct amount of tax but for the mathematical or clerical error, such notice shall not be considered as a notice of deficiency for the purposes of subsection (a) (prohibiting assessment and collection until notice of the deficiency has been mailed), or of section 6212(c)(1) (restricting further deficiency letters), or of section 6512(a) (prohibiting credits or refunds after petition to the Tax Court), and the taxpayer shall have no right to file a petition with the Tax Court based on such notice, nor shall such assessment or collection be prohibited by the provisions of subsection (a) of this section. Each notice under this paragraph shall set forth the error alleged and an explanation thereof. (2) Abatement of assessment of mathematical or clerical errors. -- (A) Request for abatement. -- Notwithstanding section 6404(b), a taxpayer may file with the Secretary within 60 days after notice is sent under paragraph (1) a request for an abatement of any assessment specified in such notice, and upon receipt of such request, the Secretary shall abate the assessment. Any reassessment of the tax with respect to which an abatement is made under this subparagraph shall be subject to the deficiency procedures prescribed by this subchapter. (B) Stay of collection. -- In the case of any assessment referred to in paragraph (1), notwithstanding paragraph (1), no levy or proceeding in court for the collection of such assessment shall be made, begun, or prosecuted during the period in which such assessment may be abated under this paragraph. (3) Assessments arising out of tentative carryback or refund adjustments. -- If the Secretary determines that the amount applied, credited, or refunded under section 6411 is in excess of the overassessment attributable to the carryback or the amount described in section 1341(b)(1)↩ with respect to which such amount was applied, credited, or refunded, he may assess without regard to the provisions of paragraph (2) the amount of the excess as a deficiency as if it were due to a mathematical or clerical error appearing on the return.