William Howard PAYNE and
Elizabeth Payne

v.

The UNITED STATES.

No. 281-72.

United States Court of Claims.

Jan. 23, 1974.

Charles E. Robbins, Washington, D. C., for plaintiffs; William H. Payne, Washington, D. C., attorney of record.

Charles E. Auslander, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant; Gilbert E. Andrews, Jr., and Joseph Kovner, Washington, D. C., of counsel.

Before DAVIS, KASHIWA and KUNZIG, Judges.

KUNZIG, Judge:

This is a suit for the recovery of $15,-486.60 in federal income tax paid for the year 1966, plus interest on that amount. The dispute before us involves the relationship between the net-operating-loss carryback provision of Internal Revenue Code section 172 and the income-averaging provision of former section 1301. In our opinion, plaintiffs may not create a double tax benefit by combining the operations of these two relief provisions. Consequently, we hold for the Government.

None of the facts is controverted. In 1966, plaintiff William Payne received $713,625 in payment for legal services rendered for the period January 1, 1948 to April 21, 1966, in connection with the claims of the Oklahoma Cheyenne Arapaho Tribes of Indians against the United States Government. In computing their joint tax return for 1966, Mr. Payne and his wife elected to take advantage of the original version of section 1301 of the 1954 Internal Revenue Code,

now repealed.[1] This statute provided that the tax on the lump-sum payment should not exceed what the aggregate tax on that amount would have been if it were earned ratably over the 220-month period of employment. In effect, taxation at a rate more favorable to the taxpayer was made possible by "averaging" the income over the period it was earned.

The "spread back" of income yielded a monthly rate of compensation of $3,243.-75. Thus, by using former section 1301, plaintiffs saved approximately $220,000 in taxes on their 1966 income.

The present controversy, however, derives from plaintiffs' effort to save more. In 1967 and 1968, plaintiffs reported net operating losses of over $31,000 and $22,000, respectively. On June 16, 1969, they filed a claim for refund of $15,486.80 for an alleged overpayment of 1966 taxes. This claim was based upon plaintiffs' attempt to amend their section 1301 computation of the 1966 tax liability by using Code section 172[2] to "carry back" net-operating-loss deductions from 1967 and 1968, and applying them against the section 1301 allocations of income for 1964 and 1965. Apart from the 1301 allocations, 1964 and 1965 were themselves net-loss years.

The Internal Revenue Service rejected this claim on the ground that former section 1301 did not actually "shift" income from the year of receipt into prior tax years, but only affected the rate of tax applicable in the year of *receipt*, and that a net-operating-loss carryback could therefore not be deducted from section 1301 income allocated to such prior years. Plaintiffs here challenge that determination. While a number of judicial decisions on related issues exist, this appears to be a case of first impression.

■ No dispute exists here as to plaintiffs' qualification to utilize former section 1301 for the 1966 lump-sum payment or as to the existence of net operating losses in 1967 and 1968. The controversy before us, then, turns on the

---

1. "§ 1301. *Compensation from an employment*

"(a) . . . If an individual or partnership—

"(1) engages in an employment as defined in subsection (b) ; and

"(2) the employment covers a period of 36 months or more (from the beginning to the completion of such employment) ; and

"(3) the gross compensation from the employment received or accrued in the taxable year of the individual or partnership is not less than 80 percent of the total compensation from such employment,

"then the tax attributable to any part of the compensation which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual."

The Revenue Act of 1964, Pub.L. 88–272 Title II, § 232(a), 78 Stat. 106, amended the income-averaging provisions for taxable years beginning after 1963. Taxpayers who received compensation after 1963 for employment *commenced* before February 6, 1963, however, could still *elect* to use the 1954 income-averaging provision.

2. "§ 172. *Net operating loss deduction.*

"(a) *Deduction allowed.*—There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term 'net operating loss deduction' means the deduction allowed by this subsection.

"(b) *Net operating loss carrybacks and carryovers.*—

"(1) *Years to which loss may be carried.*—

"(A)(i) Except as provided in clause (ii) and in subparagraphs (D) and (E), a net operating loss for any taxable year ending after December 31, 1957, shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss.

\*　　\*　　\*　　\*　　\*

"(2) *Amount of carrybacks and carryovers.*—Except as provided in subsections (i) and (j), the entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the 'loss year') shall be carried to the earliest of the taxable years to which (by reason of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. \*　\*　\*"

question of whether the section 1301 computation of tax liability shifts to earlier years income against which net-operating-loss carrybacks can be deducted. We hold that it does not.

■ As has been demonstrated in the statement of facts above, the purpose of former section 1301 was to ease the abnormal tax burden created by a lump-sum receipt or accrual of long-term compensation by allocating such "bunched" income over the period in which it was earned. Wilkinson v. United States, 304 F.2d 469, 157 Ct.Cl. 847 (1962). In interpreting section 1301 and its companion provisions, the Internal Revenue Service has emphasized that "these sections have no effect on the income tax liability for prior years; they simply provide a special method of computing the amount of tax for the year of receipt or accrual." Treas.Reg. § 1.1301–1 (1959).

■ Consistent with this view, this court has ruled that the predecessor statute to section 1301, in allocating earnings to prior years for purpose of tax "averaging," does not reduce in the year of accrual the amount of actual income against which charitable deductions may be taken. Wilkinson v. United States, *supra*, 304 F.2d at 471, 157 Ct.Cl. at 853.³ The "spread back" of income is, thus, only a conceptual one for a specific purpose; it effects no redistribution of funds in an accounting sense. It represents a one-year, one-shot mathematical computation which may not be manipulated to maximize deduction benefits of subsequent years.

A similar result was reached by the Tax Court in a case involving the interplay of the predecessor statutes to sections 1301 and 172. Albert G. Redpath, 19 T.C. 470 (1952). The court there held at 473:

> Section [1301] merely limits the tax in the year of income or the year of receipt, it does not provide for the shifting of income or the recomputation of tax liability for other years. * * * Section [1301] is concerned with, and limits, the recomputation of tax while section [172] deals with the computation of net income, or more specifically, with net operating loss deductions.

*See* Annot., 29 A.L.R.2d 592, 625 (1953).

We believe these authorities govern the present case. Because former section 1301 did not actually shift income to prior tax years, net-operating-loss deductions could not be carried back to years which were already loss years. Plainly put, section 1301 and the carryback provisions of section 172 simply were not meant to mix with one another.

In the face of this reasoning, plaintiffs at oral argument brought forth Treasury Regulation 1.1301–2(d)(2)(ii) (1959),⁴ which they asserted allows them to effect the net-operating-loss carryback in question. We find this view untenable. As made clear by the explanatory illustration in subsection 2(d)(3), which issued contemporaneously with

---

3. The Tenth Circuit Court of Appeals reached a contrary result in United States v. Behle, 316 F.2d 134 (1963). That case, however, involved the interplay of section 1301 and the Code provisions governing charitable and medical deductions, and therefore is distinguishable. Moreover, for purposes of the present case, we choose to follow the reasoning of our own decision in *Wilkinson*.

4. "In computing the tax attributable to the compensation from an employment under this paragraph for any taxable year to or from which compensation is allocated, the effect of amounts of compensation allocated to any taxable year (or from the current taxable year) with respect to a net operating loss carryback or carryover or a capital loss carryover, shall be taken into account. Moreover, in determining the amount of tax attributable to such compensation, a computation shall also be made for any taxable year to which no amount of compensation is allocated but which is affected by a net operating loss carryback or carryover or by a capital loss carryover determined by reference to a taxable year to which amounts are so allocated and which net operating loss carryback or carryover or capital loss carryover is reduced or increased by such amounts so allocated. See subparagraph (3)(iv)(d) and (e) of this paragraph."

the section here in question, the obfuscated language of regulation 1.1301–2(d)(2)(ii) covered only net operating loss which preexisted the 1301 computation,[5] not a carryback of future net losses. *See* Treas.Reg. § 1.1301–2(d)(3) (1959). Thus, the regulation on which plaintiffs rely here has no relevance to the present facts.

■ Because both former section 1301 and section 172 are relief provisions, plaintiffs must clearly prove their qualification for these statutes' benefits. United States v. Olympic Radio & Television, 349 U.S. 232, 235, 75 S.Ct. 733, 99 L.Ed. 1024 (1955); Breen v. Commissioner of Internal Revenue, 328 F.2d 58, 62 (8th Cir. 1964). In their reliance on Treasury Regulation 1.1301–2(d)(2)(ii), plaintiffs have failed to carry this burden.

Plaintiffs' interpretation of the regulation would fly in the face of the broader rule of Treasury Regulation 1.1301–1 that the 1301 allocation not be used as a tool to reopen the computation of prior tax years. Moreover, plaintiffs' reading of the subject regulation is irreconcilable with the *Wilkinson* and *Redpath* decisions, which we follow.

Plaintiffs' final contention is that denial of the attempted net-operating-loss deduction here would put plaintiffs in a position inferior to that of taxpayers who received the same amount of income ratably over the period of employment. The argument is groundless. A man receiving $713,625 in one year *is* different from a man receiving the same amount over eighteen years. Plaintiffs have already reaped the full bounty of Congress' grace through their election of the 1301 income averaging option. To allow the compounding of this benefit by linking it to the net-operating-loss carryback deduction would be to accord a windfall not contemplated by Congress. We hardly consider plaintiffs penalized by the reduction of the 1966 tax liability by over $220,000 through income averaging. In summary, we find all of plaintiffs' arguments to be without merit.

Accordingly, defendant's motion for summary judgment is granted; plaintiffs' cross motion for summary judgment is denied; and the petition is dismissed.