**Ray BECKMAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. W–5362.**

United States District Court, D. Kansas.

April 10, 1975.

Ray Beckman pro se.

Robert J. Roth, U. S. Atty., Benjamin L. Burgess, Asst. U. S. Atty., Wichita, Kan., Evelyn Leopold, Trial Atty. Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

WESLEY E. BROWN, Chief Judge.

This is a suit for refund of $2,584.66 in income taxes attributable to the taxable years of 1969, 1970, and 1971. This sum was seized by the Internal Revenue Service by a levy on plaintiff's bank account, to collect unpaid deficiencies which had been assessed for these years.

The action was tried to the Court on January 8, 1975, at which time the matter was submitted upon an agreed Stipulation of Facts, together with a number of exhibits reflecting the historical progress of plaintiff Beckman's attempts to gain certain tax advantages through use of an income averaging method.

The central issue in controversy between the parties concerns the question of whether or not, for purposes of computing average base period income, the taxpayer is entitled to use a negative income figure, or whether this income figure for the base period must begin with zero, according to Rules and Regulations established by the Commissioner of Internal Revenue.

Of equal importance to plaintiff-taxpayer, who appears *pro se*, is the question of whether or not the Commissioner properly treated adjustments to the tax returns as mathematical errors, thereby enabling him to proceed by levy upon plaintiff's bank account, or whether the adjustments were of more substantive matter, requiring a deficiency notice, thereby allowing the taxpayer an opportunity to elect to have his tax liability predetermined by the tax court.

After consideration of the trial memorandum filed by the United States, the arguments of the parties before the Court, plaintiff's post-trial written statement, and a review of the Stipulation of Facts, together with all exhibits received in evidence, the Court makes the following Findings of Fact and Conclusions of Law:

*FINDINGS OF FACT*

1. On March 20, 1973, the Internal Revenue Service served a notice of levy on the First National Bank, Hoxie, Kansas for collection of a total of $2,584.66 in unpaid taxes owed by plaintiff for the taxable years 1969, 1970, 1971. The amounts collected pursuant to this levy were as follows: (Exhibit N)

| Tax Period Ending | Date of Assessment | Unpaid Balance | Statutory Additions | Total |
|---|---|---|---|---|
| 12/31/69 | 4/3/70 | $ 117.54 | $ 2.28 | $ 119.82 |
| 12/31/70 | 4/9/71 | 886.84 | 206.32 | 1,093.16 |
| 12/31/71 | 4/10/72 | 1,227.36 | 144.32 | 1,371.68 |
| | | | | $2,584.66 |

2. Plaintiff filed appropriate claims for refund for each of the years in question, and defendant has withdrawn its jurisdictional defense previously asserted in the pre-trial order in this action. (Dkt. 13, p. 5)

3. On or about February 23, 1970, plaintiff filed a joint federal income tax return with his wife, Edith Beckman, for the taxable year, 1969. (Ex. A) In this return he reported taxable income of $13,426, tax credits and withholdings $1,017.06, a tax liability of $553.28, and sought refund of overpayment of taxes in the sum of $463.78.

Attached to this 1969 return was Schedule G, wherein plaintiff sought to average his income over a five-year period. (26 U.S.C.A. § 1301 et seq.) This schedule listed taxable income for pertinent years as follows:

| | |
|---|---|
| 1969 | $13,426.04 |
| 1968 | 323.12 |
| 1967 | (7,856.75) |
| 1966 | (5,155.05) |
| 1965 | (1,749.61) |

In computing his base period income, plaintiff entered the figure "zero" for the years 1965–1967 in which he had a negative income figure. This was pursuant to instructions appearing at line 7 on the face of Schedule G, Exhibit A.

4. Through use of an income averaging computation provided by Schedule G, plaintiff's income tax for the year 1969 was computed by him to be $15.08.[1]

5. An examination of Exhibit A, plaintiff's 1969 tax return, reveals that in completing Schedule G, he used zero figures in computing his average base period income, according to instructions appearing in Schedule G. However, there were errors in computation, which the auditor corrected, as follows:

On line 4, Part II, plaintiff was instructed to subtract line 2 ($107) from line 1 ($13,426). Plaintiff entered $13,533 on line 4, and the auditor corrected the figure to $13,319. On line 3, part 3, plaintiff was instructed to figure 20% of line 4, Part II, $13,319. Plaintiff entered the figure zero, and this was corrected to $2,663. This led to a change on line 6, Part II and plaintiff's entry of zero was changed to $2,770. Each of plaintiff's erroneous entries required corrections which had to be made

---

1. With the addition of self-employment taxes on income derived from farming and as a contract mail carrier, the total tax liability for 1969 was computed to be: $15.08 income tax, $538.20 self-employment tax—total tax liability for the period, $553.28. (Ex. A)

in plaintiff's figures in Part IV of Schedule G. These corrections further carried over to Schedule T, which is the schedule for actual tax computation.

It does not appear from the face of Schedule G attached to the 1969 return that any of plaintiff's erroneous computations were due to use of negative income figures for the base period year.

Correction of plaintiff's computations resulted in an assessment of $2,743.50 taxes for the year 1969, less credits of $1,017.06, leaving a balance due of $1,726.44.

6. On April 3, 1970, plaintiff was notified that he had made a mistake in computing his 1969 income tax and tax surcharge; that the correct tax for 1969 was $2,743, and that the sum of $1,726.-44 was due the IRS for the taxable year, 1969. (Ex. C)

7. On April 6, 1970, plaintiff filed a "corrected copy" of Form 1040 for 1969, in which he reported an income tax due of $299.68, self-employment taxes of $438.20, total tax liability of $837.88, which resulted in a claim for refund of $179.18, instead of the $463.78 previously claimed as refund. (Ex. B)

8. On July 8, 1970, the IRS received an amended form 1040 for 1969, (captioned "Amended 5/12/70") which reported a tax liability of zero for 1969, and a claim for refund of all taxes withheld—this being in the sum of $1,017.06. (Ex. D)

9. On May 12, 1970, plaintiff sent the IRS a letter stating that he wished to withdraw his request for use of Schedule G and income averaging, in order to substitute net carryback and carry-forward provisions of the Internal Revenue Code. (26 U.S.C. § 172 et seq.) This letter stated in part: (Ex. E)

"Since writing you on May 9, 1970, I have been in contact with Mrs. Anderson of your center in Wichita, and have been advised that losses cannot be carried on income averaging, and if such be the case, withdraw request for use of Schedule G and income averag-

ing, but substitute net operating loss carry back and carry-forward procedure and claim for refund of income tax paid in the period coming under computation. . . ."

With this letter, plaintiff forwarded a claim for refund of *$633.08* in taxes paid for the years 1964–1969, per his computations of the net operating loss carry-back, carry-forward provisions of the Code, as they appeared in his letter of May 12, 1970. (Ex. E, F) This claim for refund was received by the IRS on May 14, 1970. (Ex. F)

10. On March 15, 1971, the IRS received another Schedule G form for the taxable year 1969, showing negative income figures for the years 1966, 1967, 1968 of ($1,800.00) each, and a negative figure of ($2,400.00) for the taxable year, 1965, as base period income. (Ex. H) On the reverse of this Schedule is a letter from plaintiff, dated March 11, 1971, enclosing his check for $1,165.73 in payment of the balance of the deficiency asserted by the IRS for 1969, per demand made April 3, 1970, Exhibit C. In this letter, addressed to the IRS and "The Small Claims Tax Court of the United States", he sought relief from the tax court on the premise that taxpayers were entitled to claim their standard exemptions as losses in averaging income under Schedule G.

11. Next, in chronological order, is a Notice from IRS, dated December 11, 1971, with reference to plaintiff's claim for refund received by the IRS on May 14, 1970, which was based upon plaintiff's request for application of net operating loss carry-back, carry-forward procedures. (See Ex. E, F, *supra.*)

This Notice (Ex. G), advises plaintiff that his claim has been partially disallowed. An examination of Exhibit S, which is a certificate of Assessments and Payments on plaintiff's tax liability for the year 1969, reveals that in February, 1972, plaintiff's account was credited with certain tax payments and tax abatements for tax years 1964–1968, apparently due to adjustments from appli-

cation of net operating loss carrybacks. These adjustments, together with withholdings, tax credits, and plaintiff's payment of $1,165.73 on March 15, 1971, brought him up to date insofar as payment of his 1969 tax liability was concerned, except for tax penalties and interest assessed in February, 1972, and thereafter. (Ex. S) (See also, Pltfs. Ex. 1, Supplemental Report of Audit Changes.)

12. Plaintiff timely filed a joint federal income tax return with his wife, Edith Beckman for the taxable year 1970, which reported a tax liability of $2,096.74. (Ex. J) In this return, he claimed a credit of $1,017.06 against his tax liability (per overpayment of 1969 tax). Attached to this 1970 return was Schedule G, income averaging, in which plaintiff used zero figures to average base income years, per instructions appearing on this schedule.

13. On February 12, 1972, plaintiff filed an amended tax return, Form 1040X, for the taxable year, 1969, claiming overpayment of taxes in the sum of $1,017.06. (Ex. I). The reverse side of this form computes his income average for 1969, using negative income figures for 1965–1968. These negative income figures do not match the entries on Exhibit H.

This claimed overpayment of $1,017.06 in 1969, represents the credit which plaintiff claimed in his 1970 tax return, Exhibit J.

14. Also, on February 12, 1972, plaintiff filed an amended tax return, Form 1040X for the taxable year, 1970. (Ex. K) In this amended return, he recomputed the average base income for the years preceding 1970, using negative income figures for 1966 and 1967, and claimed a refund due of $1,325.60. (Ex. K ; Stip. ¶16)

15. On August 11, 1972, plaintiff was advised by the IRS that his claim for refund of $1,325.60 on his 1970 tax liability was disallowed, upon the ground that his Schedule G computation was correct, as originally filed. (Line 5, Schedule G, zero base figures) (Ex L)

16. Exhibit T, the Certificate of the Treasury Department reflecting assessments and payments of plaintiff's tax liability for the year 1970, reflects the disallowance of the claimed credit of $1,017.06 for alleged overpayment of 1969 taxes, plus assessment of tax penalties and interest, bringing the total deficiency for 1970 to $1,093.16, which sum was collected by levy in March, 1973.

17. On or about February 17, 1972, plaintiff timely filed a joint income tax return with his wife, Edith Beckman for the year 1971, reporting a tax liability of $2,424.45. (Ex. M)

Under tax credits and payments, plaintiff claimed an allowance of $1,325.-60, which represents the amount plaintiff sought to recover on the amended return, Form 1040X for the 1970 tax year. (Exhibit K)

18. Exhibit R, the Certificate of the Treasury Department reflecting assessments and payments of plaintiff's tax liability for the year 1971, reflects the disallowance of the claimed credit of $1,325.60 for alleged overpayment of 1970 taxes, and that sum, together with penalties, costs and interest was ultimately collected by levy in March, 1973.

19. On March 20, 1973, plaintiff was served Notice of Levy (Form 668–A) on his checking account with the First National Bank in Hoxie, Kansas. (Stip. ¶20). A copy of this Levy appears as Exhibit N, referred to in Finding of Fact No. 1, *supra.*

20. The specific instructions on page 4 of Schedule G, Form 1040 for 1969 instruct the taxpayer that the figure for the computation year and the average base period years may not be less than zero. (Stip. ¶21; Ex. O, line 7)

21. In 1970, plaintiff received a note from one J. Griffith of the Internal Revenue Service regarding income averaging, with which Griffith enclosed an Internal Revenue Service publication No.

506 entitled "Computing Your Tax Under the Income Averaging Method." (Ex. P) Page 6 of Publication 506 states that base period income may not be reduced to less than zero. (Ex. Q)

22. Plaintiff's petition for relief in the United States Tax Court was dismissed for absence of jurisdiction on June 22, 1973. Thereafter, upon plaintiff's Motion to Reconsider, the Tax Court on August 3, 1973 filed a "Memorandum Sur Order", *Beckman v. Commissioner of Internal Revenue*, Dkt. No. 2571–73, denying the motion and again ruling that the Tax Court had no jurisdiction inasmuch as no notice of deficiency had been issued by the IRS under § 6212(a) of the Internal Revenue Code of 1954. It was noted that the Commissioner had treated his adjustments to plaintiff's returns as corrections of mathematical errors, which are not the subjects of a notice of deficiency, under the provisions of the Code, 26 U.S.C.A. § 6213(b)(1). (Ex. to Dkt. No. 1, Complaint)

23. Plaintiff thereafter filed his complaint in this action, seeking injunctive relief to compel the Commissioner to issue a notice of deficiency and to enjoin collection of taxes pending a hearing before the Tax Court.

24. On March 13, 1974, this Court, upon the Commissioner's Motion to Dismiss, ruled that plaintiff was not entitled to injunctive relief, but granted plaintiff leave to amend his complaint to state a cause of action for refund of the taxes in question. (Dkt. 5). Plaintiff thereafter amended his complaint, claiming refund of $2,584.66 seized by levy on his bank account. (Dkt. 6; Dkt. 12, P. T.O.)

## CONCLUSIONS OF LAW

Provisions governing adjustments and limitation on tax liability pursuant to income averaging appear in the Internal Revenue Code as § 1301 et seq., 26 U.S.C.A. For the tax year 1969, § 1301 of the Code provided:

"§ 1301. *Limitation on tax.*

If an eligible individual has averagable income for the computation year, and if the amount of such income exceeds $3,000, then the tax imposed by Section 1 for the computation year which is attributable to averagable income shall be 5 times the increase in tax under such section which would result from adding 20 per cent of such income to the sum of:

(1) 133⅓ per cent of average base period income, and

(2) the amount (if any) of the average base period capital gain net income."

For taxable years beginning after December 31, 1969, the applicable Code provision is as follows:

"§ 1301. *Limitation on tax.*

If an eligible individual has averagable income for the computation year, and if the amount of such income exceeds $3,000, then the tax imposed by section 1 for the computation year which is attributable to averagable income shall be 5 times the increase in tax under such section which would result from adding 20 per cent of such income to 120 per cent of average base period income." (As amended Publ.L. 91–172, Title III, § 311(a), Dec. 30, 1969, 83 Stat. 586).

By statutory definition, the term "average base period income" means one-fourth of the sum of the base period incomes for the base period. 26 U.S.C. § 1302(c)(1). The "base period" means the 4 taxable years immediately preceding the computation year. 26 U.S.C. § 1302(e)(2).

Pursuant to the provisions of the Code, 26 U.S.C.A. § 1305,[2] the Secretary of the Treasury has prescribed applica-

---

2. 26 U.S.C.A. § 1305 provides: "The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this part."

ble regulations governing computations for income averaging. Treasury Regulation § 1.1302–3, 26 C.F.R.Rev. 1/1/69, in pertinent part provides:

"1.1302–2 *Average base period income.*

\* \* \* \* \* \*

(b) Base period income—(1) Definition. Except as otherwise provided in subparagraph (3) of this paragraph, the term 'base period income' means taxable income for any base period year first increased in accordance with subparagraph (A) of section 1302(c)(2), and this section, and then decreased in accordance with subparagraphs (B) and (C) of section 1302(c)(2) and this section. Base period income for any taxable year may never be less than zero." (Emphasis added.) [3]

Section 1302(c)(2) of the Code, 26 U.S.C.A., (1964) (applicable to the 1969 tax year), specifically stated that "base period income for any taxable year is the taxable income for such year first increased and then decreased (*but not below zero*)" according to a certain specified formula thereafter set out. Upon amendment of § 1302 in 1969, the phrase "but not below zero" was dropped in setting out the applicable formula.

■ The purpose of § 1301 is to ease abnormal tax burdens created by receipt of long-term compensation received in one year by allocating such "bunched income" over the period in which it was earned. *Payne v. United States*, (Ct. Cls.1974) 489 F.2d 1404, 1406. "The statute is intended to put the taxpayer, if he makes this choice, in essentially the same position as if the fee (or earnings) had been earned ratably during each of the years." *United States v. Behle*, (10 Cir. 1963) 316 F.2d 134, 136.

■ In the Court's view, the purpose of a rule prohibiting use of negative base period income in income averaging

relates to the overlapping of other alternative tax relief sections of the Code, provided by net operating loss carryback computations, as they may be allowed under § 172 of the Code, 26 U.S.C.A.

In this instance, plaintiff elected to compute his 1969 tax liability upon the basis of income averaging under § 1301 et seq.; he then withdrew his request, and elected to proceed under a theory of net-operating loss carry-back computations to take into account his loss years, and successfully obtained a partial allowance for his claimed losses. Plaintiff then sought to assert his theory that he was entitled to again use these loss years by using negative income figures for the purpose of income averaging under § 1301. The Court agrees with the observation made in *Payne v. United States, supra*, 489 F.2d at 1406:

"Plainly put, section 1301 and the carry-back provisions of section 172 simply were not meant to mix with one another."

■ Because § 1301 et seq. of the Code, giving the taxpayer an election to compute his tax upon an income averaging theory are relief provisions, plaintiff is required to clearly prove his theory of proper application. This he has failed to do. The Court is of the opinion and so concludes that the Regulations prohibiting use of negative income figures in calculating base income for income averaging, are valid and reasonable interpretations of the Code provisions governing income averaging, and are clearly compatible when considered in the light of the other relief provision of the Code governing net operating loss carrybacks.

■ The Court likewise concludes that plaintiff's contentions with reference to his right to deficiency notice and access to the Tax Court are without merit.

---

3. Comparable regulations for tax years begining after December 31, 1969, appear be 26 C.F.R., Revised 4/1/74, § 1.1302–2(b).

Section 6213(b)(1) of the Code, concerning exceptions to restrictions on assessments (which generally require a notice of deficiency or "90-day letter" prior to assessment), provides:

"(1) *Mathematical errors.*—If the taxpayer is notified that, on account of a mathematical error appearing upon the return, an amount of tax in excess of that shown upon the return is due, and that an assessment of the tax has been or will be made on the basis of what would have been the correct amount of tax but for the mathematical error, such notice shall not be considered as a notice of deficiency for the purposes of sub-section (a) (prohibiting assessment and collection until notice of the deficiency has been mailed), or of section 6212(c)(1) (restricting further deficiency letters), or section 6512(a) (prohibiting credits or refunds after petition to the Tax Court), and the taxpayer shall have no right to file a petition with the Tax Court based on such notice, nor shall such assessment or collection be prohibited by the provisions of subsection (a) of this section."

Section 6201(a)(3) of the Code, 26 U.S.C.A. provides that overstatements of tax credits due are to be treated in the same manner as mathematical errors:

"(3) *Erroneous income tax prepayment credits.*—If on any return or claim for refund of income taxes under subtitle A there is an overstatement of the credit for income tax withheld at the source, or of the amount paid as estimated income tax, the amount so overstated which is allowed against the tax shown on the return or which is allowed as a credit or refund may be assessed by the Secretary or his delegate in the same manner as in the case of a mathematical error appearing upon the return."

The Court is of the opinion, and so concludes, that adjustments to plaintiff's tax returns were based upon mathematical errors within the meaning of § 6201(a)(3) and § 6213(b)(1) quoted supra, and that plaintiff was not entitled to a notice of deficiency before levy. Exhibit A reflects numerous mistakes in arithmetic, errors in transportation of figures, and failure on the part of plaintiff to follow explicit instructions in the preparation of his Schedule G. Plaintiff's tax returns for 1970 and 1971 wrongfully claimed tax credits not due him.

The Court further concludes that plaintiff's reliance on the recent decision of the Fifth Circuit in *Clark v. Campbell,* (1974) 501 F.2d 108 is misplaced. There the Court ruled that a deficiency notice must be issued before the Commissioner could levy upon the taxpayer's property under a special "quick-termination" jeopardy assessment involving drug traffic. The application of § 6213(b)(1) involving mathematical errors was not an issue in that case.

For the foregoing reasons, the Court concludes:

1. For the purposes of averaging income under the provisions of 26 U.S.C.A. § 1301 et seq. taxable income for a base period year may not be reduced below zero.

2. The Commissioner of Internal Revenue properly treated the erroneous figures on plaintiff's tax returns as mathematical errors.

3. The Commissioner was not required to issue a notice of deficiency in connection with his correction of mathematical errors upon plaintiff's tax returns and plaintiff was not entitled to proceed in the Tax Court prior to levy.

4. There being no right to use negative income figures during base period years for the purpose of computing tax due under income averaging relief provisions of 26 U.S.C.A. § 1301, plaintiff is not entitled to any refund of income taxes paid for the taxable years 1969, 1970, and 1971.

Accordingly,

It is ordered that the Clerk of this Court enter judgment in favor of the defendant United States of America upon plaintiff's complaint for refund of taxes for the years 1969, 1970, and 1971.