FIRST CHICAGO CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10037-78. Filed April 6, 1983.

*William A. Cromartie, John L. Snyder,* and *Peter F. Lovato III,* for the petitioner.

*Seymour I. Sherman,* for the respondent.

## OPINION

DAWSON, *Judge*: This case is before the Court on respondent's motion for partial summary judgment and petitioner's cross-motion for partial summary judgment. These motions are now assigned to Special Trial Judge Fred S. Gilbert, Jr., for consideration and ruling thereon. After reviewing the record, the Court agrees with and adopts his opinion, which is set forth below.[1]

## OPINION OF THE SPECIAL TRIAL JUDGE

GILBERT, *Special Trial Judge*: By notice of deficiency mailed June 2, 1978, respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1972 in the amount of $298,861. The only issue for decision is whether the statute of limitations set forth in section 6501(a)[2] bars the assessment and collection of the deficiency determined by respondent.

All of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

The petitioner, a corporation organized under the laws of Delaware, maintained its principal office at One First National Plaza, Chicago, Ill., at the time the petition herein was filed. In accordance with extensions granted by the Internal Revenue Service, petitioner filed timely Federal income tax returns

---

[1]Since the motions herein are pre-trial motions, the Court concludes that the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure, are not applicable in this case. This conclusion is based upon the authority of the "otherwise provided" language of that Rule.

[2]Unless otherwise indicated, all section and chapter references are to the Internal Revenue Code of 1954 as in effect for the period in issue.

for the taxable years 1972 and 1974 on May 17, 1973, and June 13, 1975, respectively.

Petitioner's 1974 return reflected a net capital loss in the amount of $981,428.28, and an unused investment credit in the amount of $7,698,175.14. As a result of these two items, petitioner filed an application for a tentative refund of tax (Form 1139) pursuant to the "quick refund" provisions of section 6411.[3] The application requested tentative carryback adjustments based upon an allocation of the entire net capital loss and $1,647,896.85 of the unused investment credit from 1974 to 1971. The Internal Revenue Service allowed the carryback adjustments as requested by petitioner and, as a result thereof, refunded $1,942,325.33 of tax previously paid by petitioner for 1971.

Neither the amount of either of the carryback adjustments nor the propriety of allowing either carryback to 1971 has ever been questioned by respondent or petitioner; both parties agree that the carrybacks reduced the 1971 tax imposed on petitioner by an amount equal to the 1971 tax refunded to petitioner. The disputed issue in this case instead concerns respondent's determination as to the effect of the carryback adjustments on the tax imposed under section 56 for the taxable year 1972, and the effect, if any, of the adjustments on the period of limitations on assessment of a deficiency for 1972.

In addition to the other taxes imposed under chapter 1 (the income tax), section 56 imposes a tax (the minimum tax) on certain items of tax preference described in section 57. As in effect during 1971 and 1972, section 56 provided, in relevant part:

SEC. 56(a). IN GENERAL.—In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the

---

[3]Sec. 6411(a) provides that a "taxpayer may file an application for a tentative carryback adjustment of the tax for the prior taxable year affected by a net operating loss carryback * * *, by an investment credit carryback * * *, or by a capital loss carryback * * *, from any taxable year."

Sec. 6411(b) provides that, within "a period of 90 days from the date on which an application for a tentative carryback adjustment is filed under subsection (a), * * * the Secretary shall make, to the extent he deems practicable in such period, a limited examination of the application, to discover omissions and errors of computation therein, and shall determine the amount of the decrease in the tax attributable to such carryback upon the basis of the application and the examination."

income of every person, a tax equal to 10 percent of the amount (if any) by which—

 (1) the sum of the items of tax preference in excess of $30,000, is greater than

 (2) the sum of—

 (A) the taxes imposed by this chapter for the taxable year * * * and

 (B) the tax carry overs to the taxable year.

 * * * * * * *

 (c) TAX CARRY OVERS.—If for any taxable year—

 (1) the taxes imposed by this chapter * * * exceed

 (2) the sum of the items of tax preference in excess of $30,000, then the excess of the taxes described in paragraph (1) over the sum described in paragraph (2) shall be a tax carryover to each of the 7 taxable years following such year. The entire amount of the excess for a taxable year shall be carried to the first of such 7 taxable years, and then to each of the other such taxable years to the extent that such excess is not used to reduce the amount subject to tax under subsection (a) for a prior taxable year to which [such] excess may be carried.

When initially computing its minimum tax liability for 1972, petitioner properly used a portion of its 1971 income tax as a "tax carryover" to 1972 pursuant to section 56(a)(2)(B) and section 56(c). This tax carryover served to reduce the amount of the minimum tax imposed on petitioner for 1972. Following the allowance of the carryback adjustments described above, however, respondent determined a deficiency in petitioner's minimum tax for 1972 on the basis that the tax carryover to that year should be reduced as a result of the decrease in petitioner's 1971 income tax which resulted from those carryback adjustments and that the sum of the items of tax preferences subject to tax should likewise be increased.

Petitioner does not challenge the theory upon which respondent's determination is based; rather, petitioner contends that the statute of limitations for assessment of a deficiency for 1972 had expired at the time the statutory notice of deficiency for 1972 was issued. Petitioner relies on the general 3-year period of limitations prescribed in section 6501(a), which provides as follows:

SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

 (a) GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * , and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

Respondent recognizes that the general 3-year assessment period has expired. However, he argues that here the applicable period of limitations on assessment is prescribed in section 6501(h) and (j), rather than section 6501(a). Section 6501(h) and (j) provides, in relevant part:

(h) NET OPERATING LOSS OR CAPITAL LOSS CARRYBACKS.—In the case of a deficiency attributable to the application to the taxpayer of a net operating loss carryback or a capital loss carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(2) [now section 6213(b)(3)]), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the net operating loss or net capital loss which results in such carryback may be assessed. * * *

\* \* \* \* \* \* \*

(j) INVESTMENT CREDIT CARRYBACKS.—In the case of a deficiency attributable to the application to the taxpayer of an investment credit carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(2) [now section 6213(b)(3)]), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the unused investment credit which results in such carryback may be assessed, or, with respect to any portion of an investment credit carryback from a taxable year attributable to a net operating loss carryback or a capital loss carryback from a subsequent taxable year, at any time before the expiration of the period within which a deficiency for such subsequent taxable year may be assessed.

Under section 6501(h) and (j), the period for assessing a deficiency attributable to the application to the taxpayer of a net operating loss carryback, capital loss carryback, or investment credit carryback is the same as the period within which a deficiency may be assessed for the taxable year in which the net operating loss, capital loss, or investment credit arose. Since the deficiency determined in this case can be traced to the capital loss and investment credit which arose in 1974, respondent contends that these sections extend the period for assessing that deficiency to include the period for assessing a deficiency for 1974. The notice of deficiency in this case was mailed within 3 years after the return for 1974 was filed; therefore, relying upon section 6501(h) and (j), respondent argues that the period for assessing a deficiency for 1972 has not yet expired. We disagree with respondent. In our opinion, section 6501(h) and (j) does not apply in this case.

The quick refund provisions of section 6411 and the provisions of section 6501(h)[4] were originally enacted as sections 3780 and 276(d) of the Internal Revenue Code of 1939 by the Tax Adjustment Act of 1945 (Act of July 31, 1945, ch. 340, 59 Stat. 521, 525). The report of the House Ways and Means Committee on this legislation (H. Rept. 849, 79th Cong., 1st Sess. (1945), 1945 C.B. 566) contains the following pertinent passages (1945 C.B. at 583):

> In recognition of the fact that, due to the short period of time allowed [generally 90 days], the Commissioner necessarily will act upon an application for a tentative carry-back adjustment only after a very limited examination, subsection (c) of section 3780 [now section 6213(b)(3)] provides a summary procedure whereby the Commissioner and the taxpayer each may be restored to the same position occupied prior to the approval of such application. Subsection (c) provides that if the Commissioner determines that the amount applied, credited, or refunded with respect to an application for a tentative carry-back adjustment is in excess of the overassessment properly attributable to the carry-back upon which such application was based, he may assess the amount of the excess as a deficiency as if such deficiency were due to a mathematical error appearing on the face of the return. * * *
>
> * * * * * * *
>
> It is to be noted that the method provided in subsection (c) of section 3780 to recover any amounts applied, credited, or refunded under section 3780 *which the Commissioner determines should not have been so applied, credited, or refunded* is not an exclusive method. It is contemplated that the Commissioner will usually proceed by way of a deficiency notice in the ordinary manner, and the taxpayer may litigate any disputed issues before The Tax Court. The Commissioner may also proceed by way of a suit to recover an erroneous refund. [Emphasis added.]

With respect to the provisions for extending the period of limitations now prescribed in section 6501(h) and (j), the report states (1945 C.B. at 588):

> Subsection (e) of section 5 of the bill adds a new subsection (d) to section 276 of the Code, relating to the period within which assessments may be made. Such new section 276(d) [now section 6501(h)] provides that a deficiency attributable to a net operating loss carry-back or an unused excess profits credit carry-back, including those amounts which may be assessed pursuant to the provisions of section 3780(b) and (c), may be assessed at any

---

[4]Although added to the Internal Revenue Code of 1954 at a later time, the purpose and effect of sec. 6501(j) is essentially the same as that of sec. 6501(h). See Technical Explanation of the Revenue Act of 1962, to accompany H.R. 10650 (Pub. L. 87–834), 87th Cong., 2d Sess. (1962), 1962–3 C.B. 841, 870–871.

time prior to the expiration of the period within which a deficiency may be assessed with respect to the taxable year of the claimed net operating loss or unused excess profits credit resulting in such carry-back. * * * *In determining whether there is a deficiency attributable to a carry-back, proper adjustment shall be made in computing the net operating loss or unused excess profits credit, in computing the carry-backs, and in computing the amount of the net operating loss deduction or unused excess profits credit adjustment.* * * [Emphasis added.]

As the committee report shows, the extended periods of limitation prescribed in section 6501(h) and (j) apply only where: (1) A carryback is erroneously applied to the taxpayer; (2) as a result of the carryback, a tax is improperly refunded on the ground that the tax thought to be imposed was less than the tax actually imposed; and (3) a deficiency[5] results when the Commissioner makes an adjustment to or disallows the carryback upon discovering an error in applying the carryback or in determining the amount or existence of the loss or credit giving rise to the carryback. Under these circumstances, the period of limitations for the year to which the carryback is applied is extended by section 6501(h) and (j) to permit the Commissioner to recover the tax which was refunded as a result of the erroneous application of the carryback to the taxpayer. See *Bennett v. Commissioner*, 65 T.C. 506 (1975); *Bouchey v. Commissioner*, 19 T.C. 1078 (1953); *Leuthesser v. Commissioner*, 18 T.C. 1112, 1123–1126 (1952). See also sec. 6501(m); *Pesch v. Commissioner*, 78 T.C. 100, 131–137 (1982); *Jones v. Commissioner*, 71 T.C. 391, 395–398 (1978); *Maxcy v. Commissioner*, 59 T.C. 716, 729–731 (1973).

Here, the respondent seeks to have the Court open up a closed year for the purpose of asserting a deficiency attribut-

---

[5]SEC. 6211 DEFINITION OF A DEFICIENCY.

(a) IN GENERAL.—For purposes of this title * * * the term "deficiency" means the amount by which the tax imposed * * * exceeds the excess of—

(1) the sum of

(A) the amount shown as the tax by the taxpayer upon his return * * * plus

(B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

(2) the amount of rebates, as defined in subsection (b)(2), made.

(b) RULES FOR APPLICATION OF SUBSECTION (a).—For purposes of this section—

\* \* \* \* \* \* \*

(2) The term "rebate" means so much of an abatement, credit, refund, or other payment, as was made on the ground that the tax imposed * * * was less than the excess of the amount specified in subsection (a)(1) over the rebates previously made.

able to the correction in the amount of the "tax carryover," provided by section 56(c), from the year 1971 to the year 1972 used in computing the base for the minimum tax for 1972. It is well settled that a closed year cannot be opened for further assessment of tax except upon a specific mandate in the statute. Yet, the only authority offered for this request to open a closed year, section 6501(h) and (j), provides for extending the statute of limitations only in the case of deficiencies attributable to "carrybacks." The difference in the treatment accorded "carrybacks" and "carryovers" in the Internal Revenue Code makes it obvious that the Congress was fully aware of the difference between the two. Thus, there is no basis for any contention that the term "carrybacks" used in the statute extending the period of assessment should be construed to include "carryovers" as well. No authority for such a proposition has been cited, and we know of none.

In the instant case, as indicated, there were no carrybacks applied to 1972, the year of the deficiency. In addition, the carrybacks to 1971 in question were *not erroneously* applied to the petitioner, the refund that resulted from the carrybacks was not improper, and the deficiency determined by respondent does not result from any adjustments to or disallowance of either of the carrybacks or the capital loss or investment credit from which those carrybacks arose. Furthermore, since no refund was ever made for 1972, the assessment of the deficiency in question would obviously not result in the recovery of a refund for that year.

In view of the foregoing, we conclude that the facts presented in this case are simply outside the scope of section 6501(h) and (j). Since respondent mailed the notice of deficiency after the expiration of the period of limitations set forth in section 6501(a), assessment of the deficiency in question is barred. Accordingly, respondent's motion for partial summary judgment will be denied and petitioner's cross-motion for partial summary judgment will be granted.

*An appropriate order and decision will be entered.*

Reviewed by the Court.

FEATHERSTON, *J.*, concurring: I concur in both the result reached by the majority and the reasoning supporting its conclusion. I agree with the majority that, although section 6501(h) and (j) extends the statute of limitations to permit the Commissioner to recover an erroneous refund made as a result of the application of a loss or credit carryback, that section is not applicable when a carryback has been correctly computed and applied.[1] The result reached by the majority is also supported by legislative history which shows that only the year to which the carryback is applied may be reopened under section 6501(h) and (j). I wish only to add a few observations about this legislative history and mention some additional court decisions.

Petitioner sustained a net capital loss and had an unused investment credit in 1974. Under the tentative carryback adjustment procedures of section 6411, the loss and credit were carried back to 1971, and a refund was made for that year. An audit confirmed the correctness of the 1971 refund, but respondent asks us to hold that section 6501(h) and (j) sanctions reopening 1972, a year otherwise closed by limitations to which the loss and unused credit were not carried, for the assessment of a section 56 minimum tax deficiency. To adopt respondent's argument would, in my opinion, require us

---

[1]Judge Whitaker in his dissent characterizes the refund paid to petitioner as "admittedly erroneous." This characterization is, in my view, erroneous. The refund for 1971 was correct. As detailed in note 9 *infra*, the Commissioner failed, while 1972 was open for assessment, to offset or assert separately a 1972 minimum tax deficiency and now, after the limitations period for 1972 has expired, seeks to assert a deficiency for that year. As the majority states, "the carrybacks to 1971 in question were *not erroneously* applied to petitioner," and "the refund that resulted from the carrybacks was not improper." The question here is not the propriety of the refund for 1971, but whether respondent may reach 1972 in order to make petitioner's tax for that year consistent with the *correct* refund for 1971, or, in other words, whether 1972 is closed to adjustment by the statute of limitations.

to give an expansive interpretation to the "attributable to" language in section 6501(h) and (j) which would disregard explicit legislative history and modify a longstanding interpretation of that section.

As I read the legislative history, the purpose of section 6501(h) and (j) is, where an excessive refund has been made pursuant to a tentative carryback adjustment application, to restore the Commissioner and the taxpayer to the same positions that they occupied prior to the approval of the application;[2] that section thus does not apply where the taxpayer is entitled to retain the tentative refund. In adopting this legislation, the Congress did not leave it to the courts, as Judge Whitaker suggests, to achieve what they conceive to be a "rational result," but rather the Congress spoke in precise terms as to the results it wanted achieved and later dealt with specific problems as they arose. The Congress has never, in my opinion, authorized the reopening of an otherwise barred year for which no adjustment was made.

Section 276(d) of the 1939 Code provided for an extended period of limitations on the assessment of deficiencies "attributable to" net operating loss carrybacks. Through inadvertence, Congress initially failed to include a successor to section 276(d) in the 1954 Code. This oversight was corrected by section 81(b) of the Technical Amendments Act of 1958, Pub. L. 85–866, 72 Stat. 1606, which added section 6501(h) to the Code. The accompanying Senate report explains:

(b) *Years to which carrybacks are applied.*—A rule in the 1939 code provided that where a net operating loss was carried back to reduce the

---

[2]H. Rept. 849, to accompany the Tax Adjustment Bill of 1945, 79th Cong., 1st Sess. (1945), 1945 C.B. 566, 583, explained the provision which became 1939 Code sec. 3780(c) and which authorized the recovery of tentative refunds found on audit to have been erroneously made, in part, as follows:

"In recognition of the fact that, due to the short period of time allowed, the Commissioner necessarily will act upon an application for a tentative carryback adjustment only after a very limited examination, subsection (c) of section 3780 provides a summary procedure whereby the Commissioner and the taxpayer each may be restored to the same position occupied prior to the approval of such application. * * * "

Judge Whitaker quotes other excerpts from H. Rept. 849, *supra*. The "each tax affected by the carryback" language and similar phrases used in those excerpts were needed because both the income tax and the closely related World War II excess profits tax as well as the declared value excess profits tax then in force could be affected by net operating loss carrybacks. I find nothing in the reports or statutes indicating an intent to authorize the Commissioner to reopen any otherwise closed year to which the loss was not carried back.

income of *an earlier year*, any deficiency *for that earlier year* attributable to the carryback could be assessed at any time a deficiency for the subsequent year of the loss could be assessed. This rule, which was inadvertently omitted from the 1954 Code, was restored by the House bill. Thus, for example, if a 1956 loss is carried back to offset the income of 1954, a deficiency for 1954 could, in general, be assessed within 3 years after the return for 1956 was filed. Your committee has accepted this provision. [S. Rept. 1983, 85th Cong., 2d Sess. (1958), 1958–3 C.B. 922, 1019; emphasis added.]

Thus, only the year to which the carryback has been applied is reopened for adjustment by section 6501(h).[3]

Section 6501(h) initially dealt only with deficiencies attributable to net operating loss carrybacks. When, however, the Tax Reform Act of 1969 amended section 1212(a) to allow corporations to carry back capital losses[4] and section 6411(a) to provide for the "same 'quickie' refund procedure in the case of the 3-year capital loss carrybacks as presently is available in the case of net operating loss carrybacks,"[5] a corresponding amendment was made to section 6501(h) making that section applicable to deficiencies attributable to capital loss carrybacks as well as net operating loss carrybacks.[6] It is clear that the prior legislative history discussed above applies equally to net operating loss carrybacks and capital loss carrybacks, such as the one concerned in the present case. The premises on which Congress proceeded in enacting section 6501(h)—that the rule of the 1939 Code was restored and that such rule provided for the assessment of a deficiency only for the year to which the loss was carried—cannot be lightly ignored.

In addition to a capital loss carryback, this case also concerns an investment credit carryback. Credit carrybacks are the subject of section 6501(j), which was added to the Code

---

[3]The technical explanation of this provision makes the same point with equal clarity. It states:

"Subsection (b) of this section amends section 6501 of the 1954 Code (relating to limitations on assessment and collection) to provide that a deficiency *for any taxable year* attributable to the application of a net operating loss carryback *to such year* may be assessed at any time within the period of limitations on assessment applicable to the taxable year in which the loss arose. This provision, corresponding to section 276(d) of the 1939 Code, was inadvertently omitted from the 1954 Code. [S. Rept. 1983, 85th Cong., 2d Sess. (1958), 1958–3 C.B. 922, 1154; emphasis added.]"

[4]Sec. 512(a), Pub. L. 91–172, 83 Stat. 487, 638.

[5]S. Rept. 91–552 (1969), 1969–3 C.B. 423, 549, commenting on sec. 512(d)(1) of the Tax Reform Act of 1969.

[6]Sec. 512(e)(1), Pub. L. 91–172, 83 Stat. 487, 639–640.

by the Revenue Act of 1962, Pub. L. 87–834, 87th Cong., 2d Sess. The accompanying S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 707, 870–871, states:

Subsection (e) of section 2 of the bill, which was added to the bill by your committee, amends certain provisions of the code relating to statutes of limitations and interest. These amendments were made necessary by the adoption of the provision allowing a 3-year carryback of any unused investment credit.

Paragraph (1) of section 2(e) of the bill amends section 6501, relating to limitations on assessment and collection, to provide that in the case of a deficiency attributable to the application of an investment credit carryback, the deficiency may be assessed at any time before the expiration of the period within which a deficiency may be assessed for the taxable year in which the unused investment credit arose (i.e., the unused credit year) which results in such carryback. This provision in effect suspends the statute of limitations on the assessment of a deficiency *on account of the disallowance of an erroneous or improper investment credit carryback* until the expiration of the statutory period of limitations on assessments attributable to the taxable year from which the investment credit carryback arose. [Emphasis added.]

Again, this section, like section 6501(h), was intended to raise the limitations bar only with respect to "the assessment of a deficiency on account of the disallowance of an erroneous or improper investment credit carryback." It was not intended to raise the bar with respect to other closed years or even with respect to other adjustments in the same year where, as in the instant case, the refund was correct and proper.

In recognition of the precision with which the Congress has spoken in this area, this Court in applying section 6501(h) and its 1939 Code predecessor has held that the period of limitations for the assessment of a deficiency for a year to which a net operating loss has been carried was enlarged only to the extent that the deficiency was based on an error made in the computation or application of the net operating loss carryback. The Court has rejected arguments that the period was enlarged for other adjustments even for the same year. *Leuthesser v. Commissioner*, 18 T.C. 1112 (1952);[7] *Bouchey v.*

---

[7]In *Leuthesser v. Commissioner*, 18 T.C. 1112, 1125 (1952), this Court, holding that the predecessor of sec. 6501(h) did not permit the Commissioner "to correct an error in the tax reported for the earlier year to which the carry-back was applied" but came into play only "if the refund were erroneous by reason of an incorrect application of the carry-back adjustments * * * or by reason of an incorrect determination of the amount or existence of losses giving rise to the carry-back," said:

"Neither the language of the statute nor the legislative history supports respondent's

*Commissioner*, 19 T.C. 1078, 1081–1082 (1953); *Bunn's Auto Sales v. Commissioner*, 35 T.C. 861, 864 (1961).

Respondent here concedes that no error was made in the computation of the carryback from 1974 to 1971. He further concedes that the deficiency he here seeks is not for a year (1971) to which the carryback was applied, credited, or refunded. He seeks a deficiency for a year (1972), not otherwise affected by the carryback, on grounds other than a correction of the amount or application of the carryback adjustment. His position thus cannot be reconciled with the *Leuthesser*, *Bouchey*, and *Bunn's Auto Sales* cases.

The Congress relaxed the rule of these cases in 1966 to some extent by adopting section 6501(m). That section, which is specifically applicable to quick refunds under section 6411 such as the one concerned in the present case, authorizes the Commissioner to assess a deficiency for a year to which a capital loss or investment credit is carried at any time during the period of limitations for the year in which the loss or credit arose, just as he may do under subsections (h) and (j). Unlike assessments under subsections (h) and (j), however, which are limited to deficiencies attributable to the carryback, assessments under subsection (m) may be made for any reason. *Jones v. Commissioner*, 71 T.C. 391, 397 (1978). The amount of the assessment is, however, limited to the amount of the refund previously granted, less amounts which may be assessed under subsections (h) and (j). Furthermore, section 6501(m) expressly provides that it is only "for such prior taxable year," i.e., the year to which the carryback is applied, that the statute of limitations is to be extended.[8] This is entirely consistent with

---

position. Section 3780(c), in providing for assessment of erroneous allowances is specifically limited to the situation where 'the Commissioner determines that the amount applied, credited or refunded under subsection (b) is in excess of the over-assessment *attributable to the carry-back* with respect to which such amount was applied, credited or refunded * * * .' (Emphasis added.) And throughout the report of the House Ways and Means Committee which accompanied the bill introducing these provisions, the inference is inescapable that they were intended merely to permit an enlargement of the period of limitations where the error giving rise to the deficiency was 'attributable to the carry-back.' *Nowhere is there any suggestion that liability for the earlier year is to be kept alive for all purposes (limited only by the amount of the refund or credit) for an additional period of years beyond the original period of limitations.* [Emphasis added; fn. ref. omitted.]"

[8] The report of the Committee on Ways and Means of the House of Representatives explains:

"Provision for quick refunds can, of course, result in the payment of larger refunds than

the interpretation given above of the extension of the period of limitations under subsections (h) and (j).

*Herman Bennett Co. v. Commissioner*, 65 T.C. 506 (1975), provides no support for respondent. There, the taxpayer incurred a net operating loss in 1969 and claimed a carryback adjustment to 1966. The tentative allowance of the 1966 adjustment released a previously allowed investment credit (which audit showed had been earned in 1965 and carried over to 1966). The taxpayer then applied for a refund for 1963 based on having the released 1966 investment credit applied against its 1963 tax. The refund was granted but a notice of deficiency for 1963 was later mailed to the taxpayer within the limitations period applicable to 1969. This Court held that the notice of deficiency was timely, applying the specific language of section 6501(j). The facts of *Bennett* may be interpolated into the section as follows:

In the case of a deficiency [for 1963] * * * with respect to any portion of an investment credit carryback from a taxable year [1966] attributable to a net operating loss carryback or a capital loss carryback from a subsequent taxable year [1969], at any time before the expiration of the period within which a deficiency for such subsequent taxable year [1969] may be assessed.

The portion of the statute quoted above was referred to in *Bennett* as the "second operative clause" of section 6501(j). That clause is not relevant to the present case, because petitioner's credit carryback from 1974 was not "released" by

---

would be paid if the Internal Revenue Service had more time to review the claim. Once refunded, in some instances, because of the 3-year limitation referred to above, these amounts cannot be recovered through deficiency procedures, except to the extent the deficiency is attributable to the carryback. Any amount erroneously refunded which is not attributable to the carryback may be recovered, however, by a suit to recover an erroneous refund.

"In light of the situation described above, your committee approved an amendment which extends the period for assessing a deficiency when a quick refund has been made because of a carryback of either a net operating loss or an unused investment credit, even though the deficiency is not attributable to the carryback. Under this provision, *a deficiency for a year, with respect to which a quick refund was made because of a tentative carryback*, may be assessed at any time up to 3 years after the return is filed for the taxable year in which the carryback arose (provided this period is not further extended by other provisions of sec. 6501; i.e., where there was fraud involved, etc.). However, in such a case the deficiency assessment which may be made as the result of this provision cannot exceed the amount of the quick refund. (The deficiency assessment made as a result of this provision cannot exceed the amount of the original refund reduced by any deficiency attributable to the carryback.) [Emphasis added.]"

H. Rept. 2161, 89th Cong., 2d Sess. (1966), 1966–2 C.B. 902, 904.

the allowance of a loss carryback to that year. The credit carryback in this case is, therefore, in no sense "attributable to a net operating loss or capital loss carryback from a subsequent taxable year." If the period of limitations is to be reopened here under section 6501(j), then it must be under that section's first operative clause. In *Bennett*, however, we stated that the first operative clause "deals with the applicable limitations period where an investment credit carryback has been allowed erroneously." This is manifestly not the case here, because petitioner's right to carry his unused credit from 1974 back to 1971 is unchallenged.

Where Congress speaks in general terms, the courts may have some interpretative liberties to fill in the gaps left open to reach what they conceive to be equitable results in given cases. But where Congress speaks in definite and precise terms, the courts must follow those terms.[9] As I read section 6501(h), (i), (j), (m), (o), and (p), relating to deficiencies, and the corresponding provisions of section 6511(d)(2)(A) and (B), (3) and (4), relating to refund claims, Congress has spoken definitely and precisely on the issue here presented. Almost every new carryback authorization (e.g., capital losses, investment credit, work incentive program credit, and new employee credit) has been accompanied by an amendment to these sections.[10] If respondent is correct in the instant case,

[9]It should not be inferred that I think there is anything inequitable about the result reached in this case. Long before the May 17, 1976, expiration of the general 3-year statute of limitations for the taxable year 1972, petitioner, in its Form 1139 filed on July 30, 1975, notified both the Internal Revenue Service Center in Kansas City and the Chicago District Director that the allowance of the investment credit and capital loss carrybacks from 1974 to 1971, which it was claiming in the Form 1139, would have the correlative effect of increasing the 1972 minimum tax because of a reduction in the carryover of regular taxes to 1972 from 1971. Nevertheless, the Service chose to disregard that notice and made a *full* refund of the 1971 regular tax on Oct. 6, 1975, 7 months before the 1972 statute expired on May 17, 1976, and took no action as to the resulting increase in the 1972 minimum tax until it issued the notice of deficiency on June 2, 1978. Furthermore, at the very time it received the *notice* from petitioner concerning the effect of the 1974 carryback on the 1972 minimum tax liability on July 30, 1975, the Service was auditing the taxable year 1972. In these circumstances, respondent is the victim of his own delay, not of any inequity resulting from petitioner's insistence upon an application of these highly technical statutory provisions consistent with their language, legislative history, and previous interpretations.

[10]See, for example:

(1) The amendment of subsec. 6501(j) in 1967 by sec. 2(c) of Pub. L. 90–225 to add the second operative clause which allows the application of the extended period of limitations to deficiencies attributable to credit carrybacks which are in turn attributable to net operating loss, capital loss, or other credit carrybacks;

Congress did useless acts in adopting these amendments, because, under his view, the words "attributable to the carryback" are sufficient in substance to permit the Court to do what it conceives as equity regardless of the otherwise applicable statute of limitations. I agree with the majority that such is not the law. In order for the statute of limitations to be extended as respondent argues it should be in cases like this one, legislation, in my opinion, will be needed.

FAY, DAWSON, IRWIN, WILES, CHABOT, KÖRNER, and COHEN, JJ., agree with this concurring opinion.

WHITAKER, J., dissenting: I respectfully dissent. The perspective with which one views the facts is particularly important in this case since in the final analysis we are called upon to determine the standard imposed by Congress on the right of the Commissioner to issue a deficiency notice in rather unique circumstances. We must interpret a post-World War II tax act, the Tax Adjustment Act of 1945 (Pub. L. 172, ch. 340, 59 Stat. 521) which was remedial in nature.[1] As the report of the Committee on Ways and Means describes it, the purpose of the legislation was to facilitate reconversion from the war economy "by improving the cash position of business from some of the burdens of the excess-profits tax."[2] One of the five specific purposes was to "Provide for speed-up of refunds resulting from

---

(2) Sec. 6511(d)(2)(B)(ii) of the Code, enacted by sec. 232(d) of the Revenue Act of 1964, Pub. L. 88-272, which provides for an extended period for asserting a refund for a year in which a taxpayer averaged his income under sec. 1302 of the Code where such refund is the result of a change in averageable income attributable to a change in the taxpayer's tax liability for a base period year, which in turn was attributable to a net operating loss or capital loss carryback to such base period year;

(3) The second clause of sec. 6501(o), enacted by sec. 601(d)(1) of Pub. L. 92-178 in 1971, creating an extended period of limitations for asserting a deficiency attributable to a work incentive program credit carryback which in turn was attributable to a net operating loss, investment credit, or capital loss carryback; and

(4) The second clause of sec. 6501(p) of the Code, enacted by sec. 202(d)(4)(A) of Pub. L. 95-30 in 1976, providing an extended period for assessing a deficiency attributable to a new employee credit carryback, which in turn was attributable to a net operating loss, capital loss, investment credit or work incentive program credit carryback.

[1] As the concurring opinion recognizes, the currently applicable Code section was adopted by Congress in 1958 to reenact a 1939 Code provision omitted by oversight from the 1954 Code. S. Rept. 1983, 85th Cong., 2d Sess. (1958), 1958-3 C.B. 922.

[2] H. Rept. 849, 79th Cong., 1st Sess. (1945), 1945 C.B. 566 at 566.

carry-backs of net operating losses and of unused excess-profits credits." But at the same time, Congress accompanied this speedup relief provision with mechanisms by which the Commissioner could secure repayment of any part of any refund erroneously made. In the case at bar, respondent is simply seeking to utilize the deficiency mechanism adopted as a corollary to the "quickie refund" measure, whereas petitioner is seeking to retain an admittedly erroneous refund.

The majority and concurring opinions seem to emphasize that respondent is seeking to reopen a barred year unrelated to the carryback year; that the deficiency involves another tax in another year. I submit that this emphasis is misplaced. True it is that the deficiency is in minimum tax for the year 1972 whereas the carryback was to the year 1971. However, the 1972 adjustment is in fact an automatic mechanical adjustment due directly to the 1971 carryback. Since the 1971 income tax liability was reduced by the refund, the component of the minimum tax liability calculation for 1972 consisting of the 1971 income tax paid obviously required adjustment to conform to the results of the 1971 refund. This is admitted. To avoid repaying to the United States an amount of tax conceded to be due, petitioner has sought an extremely narrow and restrictive interpretation of statutory language which is broadly worded. The majority, in my judgment, misconstrues section 6501(h) and (j).

This decision, if sustained, will force respondent to audit with extreme care future section 6411 refund claims with ensuing delay in order to avoid the possibility of an overpayment such as occurred here. Thus, the congressional intent clearly reflected in the Committee report accompanying the Tax Adjustment Act of 1945 will be defeated. Moreover, under the majority's rule, there are circumstances where a required automatic carryover reduction in the refund, as here called for, would be barred even though the gross refund must be allowed, an unconscionable result.[3]

---

[3] In this case, the 3-year statute of limitations with respect to the year 1972 expired on May 17, 1976, while the Form 1139 seeking the quickie refund was filed on July 30, 1975. Under these facts respondent, at least theoretically, had time within the regular limitation period in which to issue a statutory notice on 1972. However, the majority's decision is not rested on that fact. Suppose for example, that this taxpayer suffered product liability losses in 1981, which under sec. 172(i) would be carried back 10 years to the year 1971. Under the

It is my view that the statute of limitations changes which accompanied the "quickie refund" procedure, and those subsequently added, were intended by Congress to enable the Commissioner and the taxpayer, either or both, to recompute the tax liability of the taxpayer for every year affected by a net operating loss or a credit carryback, obviously the proper result. It is incumbent upon this Court to interpret procedural provisions of the Internal Revenue Code so as to achieve a rational result except where we are constrained by the statutory language itself, which is not the case here.

This case could in fact be disposed of very simply. Both sections 6501(h) and 6501(j) are involved. Both use identical language, insofar as here pertinent: "In the case of a deficiency attributable to the application to the taxpayer of a * * * carryback."[4] The issue is whether the reduction in the carryover amount of the 1971 income tax to 1972 is "attributable to the application to the taxpayer of" the net operating loss and investment credit carrybacks, both of which were effective to reduce petitioner's 1971 tax liability. In *Herman Bennett Co. v. Commissioner*, 65 T.C. 506 (1975), we concluded that the "attributable to" language of the second clause of section 6501(j) was satisfied where the adjustment "may be traced directly to" the carryback. These words, used in section 6501(h) and in both clauses of section 6501(j), must be construed alike. Even though the facts in *Herman Bennett* may not be comparable to the instant case, as Judge Featherston points out, we are committed to the concept that a deficiency is "attributable to" a carryback if it can be traced to the carryback. Can anyone deny that the 1972 increased tax can be "traced directly to" the carrybacks from 1974? If there were doubt as to the intendment of these words, one has but to look at the nearest dictionary.[5] But in the face of this plain

---

majority opinion, petitioner would be entitled to a further refund of 1971 taxes, but without any possibility of reduction due to the further automatic 1972 adjustment which the majority holds is outside the sec. 6501(h) and (j) provisions. I do not believe that we are required to interpret sec. 6501 so as to create such a gross legislative oversight when it is clearly not mandated by the actual statutory language.

[4]Sec. 6501(h) applies to a net operating loss carryback and a capital loss carryback whereas sec. 6501(j) applies to an investment credit carryback.

[5]"2. To ascribe (to) as belonging or pertaining; specif: a By way of cause; as, a disease *attributed* to infection." Webster's New International Dictionary 179 (unabridged) (2d ed. 1953).

statutory language, the majority seeks comfort in legislative history in order to justify the result it reaches. As appellate courts have said: "Resort to legislative history has a place in judicial construction of statutes only when resort thereto is necessary to resolve a patent ambiguity in the language of the statute."[6] "Such aids [to interpretation] are only admissible to solve doubt and not to create it."[7] Moreover, I do not believe that the majority correctly interprets the Committee report.

The Adjustment Act of 1945 added to the Code as parts of a single unified package a detailed mechanism for the filing and processing of "quickie" refunds, a procedure for summary reversal by the Commissioner of the allowance of such refunds, and various extensions of the period of limitations both on taxpayer refund claims and IRS deficiencies. The many cross-references in the Committee report reflect the intended integration of the several parts. If we must look to the report for an indication of congressional intent, we are both entitled and required to construe it as a whole.

The refund claim procedure became new Code[8] section 3780. Subsection (a) established the refund application and its scope. The report describes the scope of the "attributable to" language as follows:

Thus, if a taxpayer has a net operating loss or an unused excess profits credit in any taxable year ending on or after September 30, 1945, he may file an application for a tentative adjustment of the taxes for all prior taxable years affected by the net operating loss carry-back or the unused excess profits credit carry-back resulting from such loss or unused credit. A decrease in excess profits tax resulting from an unused excess profits credit carry-back which itself results from, or is increased in amount by, a net operating loss carry-back shall be considered to be attributable to such net operating loss carry-back. If a corporation has, e.g., a net operating loss in the calendar year 1945 which when carried back to 1943 results in an unused excess profits credit, the decrease in excess profits tax for 1941 resulting from the unused excess profits credit carry-back from 1943 shall be considered to be attributable to the net operating loss carry-back from 1945. * * * [1945 C.B. at 580.]

While income and excess profits taxes were principally affect-

---

[6]*American Community Builders, Inc. v. Commissioner,* 301 F.2d 7, 13 (7th Cir. 1962); see also *Warrensburg Board & Paper Corp. v. Commissioner,* 77 T.C. 1107 (1981).

[7]*Wisconsin R.R. Comm. v. Chicago, B. & Q. R.R. Co.,* 257 U.S. 563, 589 (1921).

[8]1939 Internal Revenue Code.

ed, the report makes it clear that the statute embodies every tax affected by the carryback.[9]

The obligation of the Commissioner under section 3780(b) is described in pertinent part as follows:

> Within such period of 90 days the Commissioner is to make such limited examination of the application as he deems practicable for omissions and errors of computation therein. The Commissioner is then to determine the increase or decrease in *any tax affected by the carry-back* upon the basis of the application and such examination. * * * In determining the increase or decrease in *each tax affected by the carry-back*, the Commissioner accordingly may correct any mathematical errors appearing on the application and he may likewise correct any adjustments *required by law* and incorrectly made by the taxpayer in computing its net operating loss, its unused excess-profits credit, the resulting carry-backs, or its net operating loss deduction or unused excess-profits credit adjustment. * * * Thus, if the taxpayer's application fails to take into account certain tax-free interest which he received in the year of the net operating loss, or *in a prior year the taxes for which are affected by the carry-back*, the Commissioner, * * * may take such tax-free interest into account in determining *the increases and decreases in the taxes affected by the carry-back.* * * * [1945 C.B. at 582; emphasis added.]

This language very plainly directs the Commissioner in checking the claim for refund based on the tentative carryback to recompute every tax affected by the carryback. The taxes to be recomputed are those of any prior year affected by the carryback. The legislative history could hardly be made clearer. The fact that there was no minimum tax in the 1939 Code and no carryforward provision cannot prevent the 1954 Code equivalent from also reaching that adjustment.

In the instant case, the Commissioner should have recomputed petitioner's 1972 tax liability as well as his 1971 tax liability, for both were directly affected by the carryback, and he should have reduced the refund accordingly. The 1972 adjustment was inevitably mandated by the Code—analogous to the classical mathematical error, which under section 6213(b) the Commissioner has long been authorized to correct by assessment without a statutory notice.[10] Petitioner clearly

---

[9] Sec. 3780(b) explicitly refers to "any income, war profits, or excess profits tax or installment thereof."

[10] See, e.g., *Beckman v. United States*, 396 F.Supp. 44 (D. Kan. 1975), affd. in an unreported opinion (10th Cir. 1977). See also the discussion of the mathematical error correction authority granted to the Commissioner by sec. 6213(b)(3) in the Committee reports

recognized the propriety of this action since petitioner itself in its application for refund reduced the 1971 refund by the 1972 increase in tax.[11]

Section 3780(c), as added by the 1945 Act, gave the Commissioner a nonexclusive summary procedure for adjustment of any excessive refund allowed. As explained by the report:

> In recognition of the fact that, due to the short period of time allowed, the Commissioner necessarily will act upon an application for a tentative carry-back adjustment only after a very limited examination, subsection (c) of section 3780 provides a summary procedure whereby the Commissioner and the taxpayer each may be restored to the same position occupied prior to the approval of such application. Subsection (c) provides that if the Commissioner determines that the amount applied, credited, or refunded with respect to an application for a tentative carry-back adjustment is in excess of the overassessment properly attributable to the carry-back upon which such application was based, he may assess the amount of the excess as a deficiency as if such deficiency were due to a mathematical error appearing on the face of the return. * * * [1945 C.B. at 583.]

Application of this summary procedure is illustrated in the report by reference to two partially offsetting adjustments in a single year. However, the example in the Committee's discussion of section 3780(b), as quoted above, must be considered incorporated by reference. Thus under section 3780(c) the Committee intended that the Commissioner would have the power to correct recalculations of refunds of 1941 and 1943 taxes, all attributable to a 1945 net operating loss.

Finally, as again here pertinent the 1945 Act added to the 1939 Code as section 276(d) the predecessor of present section 6501(h), the language of which is instructive:

> (d) NET OPERATING LOSS CARRY-BACKS AND UNUSED EXCESS PROFITS CREDIT CARRY-BACKS.—A deficiency attributable to the application to the taxpayer of a net operating loss carry-back or an unused excess profits credit carry-back, including deficiencies which may be assessed pursuant to the provisions of section 3780(b) and (c), may be assessed at any time prior to the expiration of the period within which a deficiency may be assessed with respect to the taxable year of the claimed net operating loss or unused excess profits credit resulting in such carry-back. [1945 C.B. at 538.]

---

accompanying sec. 1206, Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1703; S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 412–416; H. Rept. 94–658 (1976), 1976–3 C.B. (Vol. 2) 695, 980–984. The 1945 report recognizes this principle.

[11]The year 1972 was open for audit by respondent at this time. Query, whether the majority opinion will create a disincentive to taxpayers to volunteer this adjustment. See note 3 *supra.*

The express cross-reference to section 3780(c) confirms again the obvious scope of the statutory language itself, that this new extension of the deficiency procedure applied not just to the year to which the loss carryback was applied but also any other year to which the quickie refund claim related.

Judge Featherston's concurring opinion seeks support for his and the majority's unduly narrow interpretation of section 6501(h) and (j) in the language of the 1958 Committee reports[12] in that these two reports do describe the 1939 Code provisions in terms of a deficiency of the year to which the loss was carried back, but I construe that language as simply a generalized and abbreviated description of the most obvious application of the 1945 Act provisions. It certainly cannot serve to limit the actual and intended scope of the 1945 Act. Neither does it limit the scope of the 1958 amendment[13] which, as Judge Featherston points out, restored the 1939 Code rule.

The majority finds that three requirements must support a deficiency under section 6501(h) and (j): (i) The carryback must be erroneously applied, (ii) as a result, too much tax is refunded, and (iii) the deficiency must result from "an error in * * * the amount or existence of the loss or credit giving rise to the carryback." The authority cited for this interpretation is the legislative history, which offers no such support. Nor is this interpretation permissible under the decisions of this Court and other case law.

Under the majority's interpretation, the Commissioner would have no authority under section 6501(h) and (j) to determine a deficiency in the computation of the tax to be refunded, unless there is an error in the actual amount or existence of the loss or credit giving rise to the carryback or in the application of the carryback to the taxpayer. This result would be clearly erroneous as the majority would probably agree, for section 6501(h) and (j) authorizes the Commissioner, in determining the proper refund or credit, to adjust each tax *affected* by the carryback and to correct any mathematical

[12]S. Rept. 1983, 85th Cong., 2d Sess. (1958), 1958–3 C.B. 922; S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 707.

[13]Technical Amendments Act of 1958, Pub. L. 85–866, 72 Stat. 1606.

errors that thereby arise in order to arrive at the taxpayer's correct liability.[14] See, e.g., *DuPont v. United States*, 483 F. Supp. 588 (D. Del. 1980). The requirement applied by the majority that the amount or existence of the carryback itself must be erroneous is unfounded. *DuPont* involved the minimum tax computation in the year to which the carryback was initially carried whereas here the carryback required a recomputation of the minimum tax liability for the succeeding year. It is difficult to visualize Congress' directing one but not the other.

The majority insists that section 6501(h) and (j) does not include deficiencies attributable to carryovers but instead is restricted to deficiencies attributable to carrybacks. Thus, the majority concludes that the "attributable to" language of the two sections does not apply to an automatic adjustment in the minimum tax liability where the carryback causing that adjustment is applied in an earlier year. I suggest that such interpretation is neither required by the legislative history nor permissible under a decision of this Court, viz, *Jones v. Commissioner*, 71 T.C. 391 (1978). See also *Herman Bennett Co. v. Commissioner*, 65 T.C. 506 (1975).

*Jones* carried our interpretation of the "attributable to" language a rational step further than our decision in *Bennett*, in the context of section 6501(h). A 1970 net operating loss carryback to the year 1968 was allowed incorrectly pursuant to a claim filed under section 6411. The deficiency asserted for 1968 sought to recover the entire carryback refund. Petitioner, however, claimed that the 1968 deficiency resulting from the erroneous net operating loss should be reduced so as to take into account an unused 1971 loss carryback which could not have been utilized so long as the 1970 loss carryback had been

---

[14]The report is again instructive in its discussion of new sec. 276(d):

"In determining whether there is a deficiency attributable to a carry-back, proper adjustment shall be made in computing the net operating loss or unused excess profits credit, in computing the carry-backs, and in computing the amount of the net operating loss deduction or unused excess profits credit adjustment. *It is to be noted that it is immaterial whether the net operating loss or the unused excess profits credit as claimed by the taxpayer is different from or is exactly equal to the amount of the actual net operating loss or unused excess profits credit.* Any deficiency attributable to a carry-back resulting from such loss or unused excess profits credit may be asserted at any time prior to the expiration of the period within which a deficiency may be assessed with respect to the taxable year of the claim or actual net operating loss or unused excess profits credit. [1945 C.B. at 588; emphasis supplied.]"

allowed. The issue before us was not as to the propriety of the deficiency as it related to the erroneous 1970 carryback but rather whether petitioner was barred under these circumstances from taking advantage of the 1971 carryback in the recomputation of his 1968 tax liability. In *Jones*, after reciting that we had interpreted section 6501(h) as precluding the Commissioner from assessing a deficiency except where it was related to "circumstances giving rise to the carryback or to the statutory machinery making the loss applicable to the year at issue,"[15] we said that—

Although the 1971 net capital loss is not a part of the losses giving rise to the 1970 net operating loss carryback, it can be considered a part of the statutory machinery generally making losses applicable to the year at issue. The disallowance of the 1970 loss is so interrelated to the allowance of the 1971 loss that we find it difficult to separate the two. * * * And we find no good reason for doing so. * * * [71 T.C. at 399.]

Similarly in this case, I find the 1972 adjustment to be inseparably related to the 1971 adjustment, so much so that it should not be, in fact it cannot be, separated therefrom. And I "find no good reason for doing so." As we said in *Jones*, this type of automatic adjustment is part of the statutory machinery.

The majority makes the point that section 6501(h) and (j) applies literally to "carrybacks" whereas the involvement of 1972 results from a "carryover." This is, however, a "red herring." It is immaterial how 1972 is involved or that it is a later year. These two sections refer to carrybacks as the original source of the adjustment only; the requirement is that the deficiency be "attributable to" a carryback. There is simply nothing in the statutory provisions which precludes respondent from predicating the deficiency on a carryforward adjustment so long as it can be "traced directly to" a carryback.

Both the majority and Judge Featherston's concurring opinion accuse respondent of seeking to reopen a closed year

---

[15]The "statutory machinery" language was first articulated in *Leuthesser v. Commissioner*, 18 T.C. 1112, 1125 (1952).

for an adjustment not related to the carryback, a proposition which would be foreclosed by decisions of this Court.[16] This, too, is a "red herring." As I have pointed out, the year 1972 requires an automatic adjustment, not of any item of deduction or credit related to 1972 but simply to reduce the 1971 income tax figure incorporated into the 1972 minimum tax calculation to the corrected 1971 amount. That is not a reopening of a year for an adjustment unrelated to the carryback.

For the foregoing reasons, I would allow respondent's motion for partial summary judgment and would deny petitioner's cross-motion for partial summary judgment.

TANNENWALD, SIMPSON, WILBUR, and PARKER, *J.J.*, agree with this dissenting opinion.

---

[16]See *Leuthesser v. Commissioner, supra; Bouchey v. Commissioner,* 19 T.C. 1078 (1953); *Bunn's Auto Sales v. Commissioner,* 35 T.C. 861 (1961).